## ABIGAIL C. SHIPLEY *vs.* FIFTY ASSOCIATES.

For an injury resulting from the sliding of a mass of ice and snow from a roof upon a person travelling with due care in a highway, the owner of the building is liable, if the roof was subject to his use and control and he suffered the ice and snow to remain there for an unusual and unreasonable time after he had notice of its accumulation and might have removed it; although all the rest of the building was leased to and occupied by tenants under covenants binding them to keep in repair the premises demised to them.

TORT for injuries resulting to the plaintiff from the fall of ice and snow upon her from the roof of the defendants' building. At the trial, before *Hoar*, J., the judge reserved for the full court the question whether the plaintiff could recover upon her offer of proof, the substance of which is stated in the opinion , if so,

the case to stand for trial; otherwise, the plaintiff to become nonsuit.

*J. D. Ball & J. P. Treadwell*, for the plaintiff.

*C. A. Welch*, for the defendants.

CHAPMAN, C. J.   The plaintiff offers to prove that Union Street was a public highway in Boston, and that the sidewalk was a part of the highway; that she was travelling on the sidewalk, using proper care, and as she passed by the defendants' building a great quantity of snow and ice slid from the roof, fell upon her and greatly injured her.   She further offers to prove that the snow and ice had remained on the roof for an unusual and·unreasonable length of time after the defendants had full knowledge thereof, and might have been removed before that time.

The purpose of making highways is, as expressed by the statute, to provide a way for travellers that shall be "safe and convenient."   The statute prescribes the duty of towns, and makes them liable if they neglect to perform their duty.   But individuals are also liable for any injuries they may do by interfering with the safety and convenience of travellers.   If the defendants had suffered the snow and ice to accumulate upon an awning placed by them over the walk, and the awning, being insufficient to hold the snow and ice, had given way and injured the plaintiff, they would have been liable.   *Milford* v. *Holbrook*, 9 Allen, 17.

In this case, it does not appear that the roof projected over the walk, but was so constructed that the snow and ice collected upon it would slide off in a large mass and come down upon the walk.   It cannot be doubted that the proprietor of land adjoining a highway may erect upon it a structure that will catch the falling rain and snow, and retain it till it becomes a large mass, and allow it to freeze and thaw.   But the question here is, whether he may construct his roof in such a manner that, after the mass has accumulated, it will in certain states of the weather be projected by its own weight upon the sidewalk.   If he may, then the risk is upon travellers, and they must take notice that, at certain seasons, the sidewalks are not safe or convenient for travel, but must be avoided.

The general doctrine as to the use of property is, *Sic utere tuo ut alienum non lædas.* It would be difficult to state a reason why the rule should not be applied to a case like this. It cannot be contended that an exception exists on the ground of necessity; for the roof can be so constructed that the snow will not slide from it upon the sidewalk in masses; and if it gathers in masses, it can be removed by artificial means, without exposing travellers to danger. The rule is applied in cases quite analogous to this. If one fixes a spout or a cornice which gathers the water that falls upon his roof, and throws it upon his neighbor's land, an action lies. *Reynolds* v. *Clarke*, 2 Ld. Raym. 1399; *S. C.* 1 Stra. 634. *Fay* v. *Prentice*, 1 C. B. 828. *Bellows* v. *Sackett*, 15 Barb. 96. If one's real estate is thus protected, certainly his person must be equally protected. If the water may not be thrown upon his land, it may not be thrown upon his head while he is standing on his land. A traveller in the use of a highway is as much entitled to protection as if he were the owner in fee simple. And, as a formal proposition, it is true that any act of an individual, though performed on his own soil, if it detracts from the safety of travellers, is a nuisance. *Dygert* v. *Schenck*, 23 Wend. 447. The principle stated by Lord Cranworth in *Rylands* v. *Fletcher*, Law Rep. 3 H. L. 330, that, if a person brings or accumulates on his land anything which, if it shall escape, may cause damage to his neighbor, he does so at his peril, is applicable to this case. In that case, the defendant had accumulated water in a reservoir, to work his mill; it escaped and injured his neighbor's coal mine, because the defendant's engineer had neglected to block up certain shafts that led from the reservoir to the mine; and the defendant was held liable. He had a right to accumulate the water on his premises in that case, as the defendants had a right in this case to accumulate the snow, but he was bound to use due care to prevent it from escaping and injuring his neighbor.

But the defendants contend that they are not liable, because they were mere landlords, and not occupants of the building; and they rely upon the principle stated in *Kirby* v. *Boylston*

*Market Association*, 14 Gray, 249, that the occupier and not the landlord is bound, as between himself and the public, so far to keep the buildings and other structures abutting on a common highway in repair, that the way may be safe for the use of travellers. But it was held in that case that, only the separate parts of the building being let, and a general supervision of the whole having been retained by the landlord, the principle did not apply. It was also held that, if the plaintiff, while using the highway, suffered special damage by a nuisance created by the defendants, they were liable. The general principle undoubtedly is, that a landlord is not liable for a nuisance which is caused by the act or neglect of his tenant. If the whole of the building in this case had been rented, the question might arise whether the nuisance consisted in the roof, which, at the time of making the lease, was so constructed as to collect snow and ice, and project it into the street; or in the neglect of the occupant to remove it at a proper time and in a proper manner. But it does not appear that the place where the snow and ice accumulated was under the control of tenants. The defendants had leased to one tenant, for the term of five years from July 20, 1865, the lower floor and cellar, reserving a scuttleway. There is nothing in this lease that transfers any right to use or control the roof. They had also leased to another tenant, for the term of five years from October 19, 1865, " all the chamber stories," reserving certain rights. This conveyed no right to use or control the outside of the roof. Each lease required the tenant to keep the premises leased to him in repair, with the usual exceptions, but reserved to the lessors a right of entry to view and make repairs. The building did not cover the whole lot. We cannot construe these leases as excluding the lessors from going upon the roof, or as relieving them from obligation as owners to remove whatever substances might gather upon it and become a nuisance to travellers on the highway.

*Case to stand for trial.*