## ABIGAIL C. SHIPLEY *vs.* FIFTY ASSOCIATES.

By maintaining a building with a roof constructed so that snow and ice collecting on it from natural causes will naturally and probably fall into the adjoining highway, the owner of the building is liable, without other proof of negligence, to a person injured by such a fall upon him while travelling on the highway with due care; and it is immaterial that all the rooms in the building are occupied by tenants, if he retains control of the roof.

TORT for injuries resulting to the plaintiff, and alleged to have been caused by the defendants' negligence, from a fall of ice and snow upon her, February 1, 1867, from the roof of the defendants' building on Union Street, a highway in Boston, where she was travelling on foot. After the decision reported 100 Mass. 251, the case was tried in this court, before the chief justice, at April term 1870. At the trial, there was evidence of these facts:

The defendants owned the building, and the lot of land on which it stood, ever since 1824. It was four stories high, covered the whole lot, fronting twenty-eight feet on Union Street, and its height from the sidewalk to the eaves was thirty-eight feet. The roof was " an old-fashioned hipped roof, the ridgepole being parallel with the sidewalk," and was built, " in respect to its slope, like a very great majority of all the roofs in the city," sloping " towards the sidewalk, from the ridgepole, so that anything sliding from it would naturally fall upon the sidewalk." The lower floor and cellar were leased by the defendants to the firm of Ar Showe & Company, and " all the chamber stories " to George A. White, by leases which required the tenants to keep the demised premises in· repair, with certain exceptions, and reserved to the lessors a right of entry to view and make repairs. The tenants occupied under their leases, White occupying, with other rooms, the two rooms into. which the attic was divided, one of which had a window in the roof.

In January 1867, on the 18th instant, two feet of snow fell in Boston; on the 21st, seven or eight inches; on the 26th, up to half past six o'clock in the morning, half an inch, and at intervals during the day, fine snow, rain, mist, and ordinary snow. On February 1 there was warm and thawing weather, so that

water was dripping from the roof; and a quantity of snow slid from the roof down upon the sidewalk, and Ar Showe & Company employed a boy to shovel it from the sidewalk into the carriageway. About noon, while the boy was thus at work, the plaintiff was travelling on foot along the sidewalk, using due care, when more snow slid down from the roof, and fell upon her, injuring her seriously. Snow slides were frequent on that day in all parts of the city.

The defendants requested a ruling that, as between themselves and their tenants, if either were liable to the plaintiff, it was the tenants; but the chief justice ruled otherwise.

There was evidence that what were called "French roofs" had been constructed on buildings in Boston within fifteen years, but were comparatively few in number. The defendants offered to show "that their building was as safe as any building in the city of Boston in respect to passengers, and no other class of buildings existed till within ten years past," and "that no precaution could be taken any more than was taken in this case, to prevent accident." The chief justice overruled this offer, but ruled that the defendants might prove what precautions were actually taken, and they offered no evidence that any were actually taken, but only called a witness to testify whether any accidents ever before happened from snow slides from their roof, whose testimony was objected to and excluded.

The parties "submitted their case to the jury on the mere question of damages;" and a verdict was returned for the plaintiff with damages in the sum of $6,541.67, and the case reported for the determination of the full court "upon the questions above stated, as to the liabilities of the defendants as owners of the building, and the rulings as to the offers of proof, such disposition of the case to be made as the court shall order."

*C. A. Welch,* for the defendants, besides cases cited for the plaintiff, referred to *Fletcher* v. *Rylands,* Law Rep. 1 Ex. 265, 286, and 3 H. L. 330; *Smith* v. *Kenrick,* 7 C. B. 515; *Baird* v. *Williamson,* 15 C. B. (N. S.) 376; *Lowell* v. *Spaulding,* 4 Cush. 277; *Oakham* v. *Holbrook,* 11 Cush. 299; *Commonwealth* v *Watson,* 97 Mass. 562.

*J. D. Ball & J. P. Treadwell*, for the plaintiff, cited *Shipley* v. *Fifty Associates*, 101 Mass. 251; *Martin* v. *Simpson*, 6 Allen, 102; *Bliss* v. *Wilbraham*, 8 Allen, 564, 565; *Kidder* v. *Dunstable*, 11 Gray, 342; *Horton* v. *Ipswich*, 12 Cush. 488; *Tourtellot* v. *Rosebrook*, 11 Met. 460; *Rockwood* v. *Wilson*, 11 Cush. 221; *Dygert* v. *Schenck*, 23 Wend. 446; *Abbott* v. *Mills*, 3 Verm. 521, 529; *Lansing* v. *Smith*, 4 Wend. 9; *Stetson* v. *Faxon*, 19 Pick. 147; *Kirby* v. *Boylston Market Association*, 14 Gray, 249; *Cheetham* v. *Hampson*, 4 T. R. 318; *Drake* v. *Lowell*, 13 Met. 292; *Day* v. *Milford*, 5 Allen, 98; *Milford* v. *Holbrook*, 9 Allen, 17; *Eakin* v. *Brown*, 1 E. D. Smith, 36; *Bellows* v. *Sackett*, 15 Barb. 96; *Schooner Reeside*, 2 Sumner, 567; *Turner* v. *Tuolumne Co.* 25 Cal. 397; *The King* v. *Pedly*, 1 Ad. & El. 822; *Anderson* v. *Dickie*, 26 How. Pract. 105; *Vandenburg* v. *Truax*, 4 Denio, 464; *Thomas* v. *Winchester*, 2 Selden, 397; *McCahill* v. *Kipp*, 2 E. D. Smith, 413; *McDonough* v. *Gilman*, 3 Allen, 264; *Ryppon* v. *Bowles*, Cro. Jac. 373; *Penruddock's case*, 5 Co. 100; *Rosewell* v. *Prior*, 1 Salk. 459; *Bradbee* v. *Christ's Hospital*, 4 Man. & Gr. 714; *Stockwell* v. *Hunter*, 11 Met. 448; *Graves* v. *Berdan*, 29 Barb. 100; *Shannon* v. *Burr*, 1 Hilton, 39; *Payne* v. *Rogers*, 2 H. Bl. 350; *Durant* v. *Palmer*, 5 Dutcher, 544; *Winton* v. *Cornish*, 5 Ohio, 477; *Kerr* v. *Merchants' Exchange Co.* 3 Edw. Ch. 315; *Doe* v. *Burt*, 1 T. R. 701; *The King* v. *Moore*, 3 B. & Ad. 184.

AMES, J. At the trial, the defendants, although they were permitted to show what precautions they had taken to guard against the accident, contented themselves with offering to prove that their building was as safe as any other in the city in respect to passengers; that buildings with roofs like theirs were the only kind in use until within about ten years past; and that in this case no precaution could have been taken more than was taken in fact. Their defence proceeds upon the ground that the damage to the plaintiff was the result of an inevitable accident; that travellers in the streets in cities, in this climate, take the risk of such accidents upon themselves, as they do the danger of injury from runaway horses, or from the slippery or crowded condition of the streets; and that the defendants cannot be said to be to

blame, or to be responsible, unless it can be shown that their building was of an unusual or improper construction, or that they neglected to take proper precautions in its care and management. In other words, they claim the right to erect or maintain a building, provided it be of no unusual construction, so near to the street, and of such a shape and character that snow and ice collected upon the roof must inevitably and in the natural course of things be liable to slide down and fall upon the sidewalk, thereby exposing foot-passengers to the risk of great bodily injury. Does the law give them any such right? It will not be contended that they would have a right purposely to throw the snow or ice from the roof into the street, at the risk of passengers, and without warning or precaution of any kind. Have they the right so to construct their building, that the roof, in consequence of alternate freezing and thawing, and under the influence of natural laws, will in a like sudden and dangerous manner pour down an avalanche upon the sidewalk at the risk of the passing crowd?

The plaintiff, at the time of the accident, was where she had a right to be, and was not guilty of any want of due and reasonable care. For the purpose for which she was using the sidewalk, her rights were exactly the same as if she owned the soil in fee simple. The case in our judgment depends on the same rules, and is to be decided on the same principles, as if it raised a question between adjoining proprietors, in which the lands or buildings of one were injured by the manner in which the other had seen fit to occupy or use his own land and buildings. In contemplation of law, the person is at least as much entitled to protection as the estate. The right to discharge snow and ice from one's own house upon the person of the next door neighbor is certainly no better or stronger than the right to subject that neighbor's building or land to the same kind of inconvenience. *Shipley* v. *Fifty Associates*, 101 Mass. 251. It is well settled that, although every landowner has a right to use his own land for any lawful purpose for which in the natural course of enjoyment it can be used, yet he cannot use his neighbor's land, except upon proof of express grant or permission, or prescription which furnishes a presumption of a

grant. Water naturally collecting on the surface of his land, and naturally passing off upon the land of his neighbor, would not injure the latter in such a sense as to give him a remedy by action. But if the landowner, "not stopping at the natural use of his close," to use the language of Lord Cairns in *Rylands* v. *Fletcher*, Law Rep. 3 H. L. 330, 339, "had desired to use it for any purpose which I may term a non-natural use," the case would stand on very different ground. It has been settled that no one has a right, by an artificial structure of any kind upon his own land, to cause the water which collects thereon in rain or snow to be discharged upon his neighbor's land, either in a current or stream, or in drops. *Martin* v. *Simpson*, 6 Allen, 102. If the defendants had constructed a reservoir in their attic, to be filled by the rain, they would clearly be liable for damage occasioned to their neighbor by the breaking down of such a reservoir. It can of course make no difference that the rain comes in the form of snow, and is lodged on the outside of the roof; in either case it is collected by an artificial structure, for the convenience of one party, without the concurrence of the other. In the case already cited, at an earlier stage, *Fletcher* v. *Rylands*, Law Rep. 1 Ex. 265, Mr. Justice Blackburn, in giving the judgment which was afterwards affirmed in the house of lords, expresses himself substantially thus : Whoever for his own purposes brings on his land, and collects and keeps there any thing likely to do mischief if it escapes, must keep it in at his peril. He illustrates this proposition by putting various cases in which a party is damnified without any fault of his own, and in which he declares it to be reasonable and just that the neighbor, who has brought something on his own property not naturally there, harmless so long as it is confined to his own property, but which he knows will be mischievous if it should get upon his neighbor's land, should be held responsible to make good all damages, if he should not succeed in confining it to his own property. The case of *Fletcher* v. *Rylands* was one in which the defendant had con-structed a reservoir upon his own ground, which gave way and inundated the plaintiff's mine.

In the case at bar, it was convenient to the defendants to place their building on the line of the street, and to have their roof so constructed that the snow, which would be harmless if allowed to reach the ground as it falls from the clouds, is intercepted and lodged upon the roof at a great height above the heads of passengers. In the case of a building so situated and so constructed, it is a matter substantially certain and inevitable, that there will be occasions, and perhaps frequent occasions, in the winter season, when, with the alternations of the weather common in this climate, the accumulation upon the roof may become very great, so as to come down suddenly upon the sidewalk in a very dangerous manner. Accidents from such causes are well known to be frequent, and, as we understand the defence, could not be prevented by any amount of care or diligence under the circumstances of the present case. It is well settled, however, that no man has a right so to construct his roof as to discharge upon his neighbor's land water which would not naturally fall there. Washburn on Easements, 390. *Reynolds* v. *Clarke*, 2 Ld. Raym. 1399. *Martin* v. *Simpson*, 6 Allen, 102. In such a case, the maxim *Sic utere tuo ut alienum non lædas* would be applicable. It is not at all a question of reasonable care and diligence in the management of his roof, and it would be of no avail to the party to show that the building was of the usual construction, and that the inconvenience complained of was one which, with such a roof as his, nothing could prevent or guard against. He has no right so to construct his building that it will inevitably, at certain seasons of the year, and with more or less frequency, subject his neighbor to that kind of inconvenience; and no other proof of negligence on his part is needed. *Ball* v. *Nye*, 99 Mass. 582. He must at his peril keep the ice or the snow that collects upon his own roof, within his own limits; and is responsible for all damages, if the shape of his roof is such as to throw them upon his neighbor's land, in the same manner as he would be if he threw them there himself. He has no right to appropriate his neighbor's land in that manner for his own convenience, as a place into which he may pour the accumulated snow from his own premises.

It appears to us, therefore, that the defendants have no right to erect or maintain a building so near to the street, and with a roof of such a construction, that, notwithstanding all the care that can be taken, passengers upon the sidewalk shall be subjected to the kind of injury complained of in this case. This would be an appropriation of the sidewalk, or an application of it to their own convenience, at the risk of the traveller and without regard to public right, which they cannot lawfully make. No man would claim for them the right to collect in one stream the rain that falls upon their roof and pour it by means of a spout upon the street below. They have no better right to collect and retain the snow till it falls by its own weight. In either case, it would be an attempt to extend their right as proprietors, beyond the limits of their own property, and to secure an advantage that does not belong to them, at the expense of their neighbor, or of the traveller, whose rights for this special purpose are as complete as those of an adjoining proprietor.

With regard to the only remaining point taken by the defendants, that the liability, if any, is upon the tenants and occupants, and not upon the defendants, who are the landlords, we must consider that objection as substantially disposed of by our previous decision in this same case. 101 Mass. 251. The building was occupied by separate tenants, one of whom had some special facilities for getting upon the roof, but it does not appear that the place where the snow and ice accumulated was under the control of the tenants, or that they had anything to do with the outside of the roof. They certainly were in no · sense responsible for damages not occasioned by any neglect of duty on their part, but resulting wholly from the shape of the roof, and from the proximity of the building to the street. Their responsibility is confined to the premises which they respectively and exclusively occupied as tenants. The landlords were not excluded from going upon the roof, and so altering its construction that at all seasons of the year it should not produce any inconvenience or danger to travellers on the highway below.

The rulings at the trial appear to us to have been correct; and according to the terms of the reservation there will be

*Judgment for the plaintiff upon the verdict.*