CHARLES L. GORHAM & another *vs.* RAPHAEL GROSS & another.

Worcester.    Oct. 2, 1877. — Aug. 31, 1878.    ENDICOTT & LORD, JJ., absent.

The owner of land, who makes a contract with a firm of masons, by which the latter are to furnish all the materials and labor in building a party wall, half on his land and half on the land of an adjoining owner, is liable in tort to such adjoining owner, after the wall has been completed and accepted, for an injury to his property by the fall of the wall, resulting from its defective and unsafe condition, whether owing to his own negligence or to that of the masons.

On the issue whether the owner of land in a city, who builds a party wall under an agreement with the adjoining owner, reciting that "any points respecting the same, which are not herein specifically provided for, shall be decided by the custom in regard to party walls in the said city," is bound to put flues therein for the use of such adjoining owner, an expert may be asked if party walls in that city are "usually constructed with flues for the accommodation of the adjacent estate."

TORT for injuries by the falling of a party wall. After the decision reported 117 Mass. 442, the case was tried in this court, before *Morton*, J., who allowed a bill of exceptions in substance as follows :

On July 9, 1873, the plaintiffs and the defendants executed an indenture, the material parts of which were as follows : " Whereas the said Charles L. and Chester Gorham, and the said Gross and Strauss, are owners of certain adjoining parcels of land situated on the westerly side of Main Street in the said Worcester, between land of the People's Savings Bank on the north and land of Mrs. Mary H. E. Davis on the south, and whereas the said parties to these presents propose to erect buildings upon their respective premises, they do hereby covenant and agree, each with the other, for themselves, their heirs or assigns, that the wall between their said premises shall be what is known as a party wall, to wit : One half of the thickness of the wall shall be built upon land owned by each of the said parties to these presents, and, for the proper erection and maintenance of such party wall, the said parties do hereby give and grant each to the other, and to their heirs or assigns, all such rights and privileges in the premises and estates of each other as may be necessary for the fulfilment of this agreement in each and every particular thereof, subject to the restrictions and provisions hereinafter specified.

" It is hereby agreed that either or each party shall have the right at any time to build said party wall, or any part thereof, or to make additions thereto, by whomsoever such wall, or part, may have been previously built.

" And it is hereby agreed that the said party wall shall be built, constructed and maintained, in its several parts, and in any additions that may be made thereto, as follows : " to wit, of brick, with stone foundation, and in other respects as particularly described.

" The said party wall or any part thereof, which shall be built by one of the said parties to these presents, their heirs or assigns, shall be built to the satisfaction of the other party, their heirs or assigns, and the cost thereof shall be ascertained and agreed upon within a reasonable time after the building of such wall or part thereof, and either of the said parties their heirs or

assigns, desiring to use the said wall or a part thereof which has been built by the other party, their heirs or assigns, shall pay one half the costs of building the full thickness of the wall, for the whole of said wall in case they make use of the same, or a true proportional part of said cost, in case they use a part only of said wall.

"Each party to these presents hereby reserves the right to enter, use or improve said party wall, in such ways and for such purposes as party walls are usually constructed therefor, and it is hereby agreed that any points respecting the same, which are not herein specifically provided for, shall be decided by the custom in regard to party walls in the said city of Worcester."

On September 12, 1873, the defendants made a contract in writing with a firm of masons, by the terms of which the latter were "to furnish all materials and to perform or cause to be performed all labor in completing the granite and brick work, including setting of stone in brick work, and lathing and plastering," for a building, including the wall in question, to be erected for the defendants, "in strict conformity with the plans, specifications and detail drawings for the same furnished by, and under the superintendence and to the acceptance of, Frank W. Cherrington, architect;" the defendants were to pay them a gross sum, "seventy-five per cent. of the amount due at the close of each month for the labor and materials furnished during the month, and, upon the completion of the brick work, the full amount due therefor," and all extra work to be paid for as agreed upon by the defendants or their "agent, the architect."

The specifications set forth that "the aforesaid building is to be erected under the superintendence and to the acceptance of F. W. Cherrington, architect." Cherrington testified that the only superintendence of the building he exercised was to inspect the work, to see that the structure conformed to the specifications, and to give the contractors, on the completion of each month's work, a certificate that they were entitled to receive therefor the amount then due under the building contract, on the strength of which certificate the contractors drew their pay from the defendants.

It appeared that the wall in question was erected, one half its width on land of the plaintiffs and the other half on land of the

defendants; that the plaintiffs' lot was occupied by a one-story wooden building used as a music shop and frequented by customers; and that at five o'clock in the morning of December 4, 1873, the wall fell, crushing this building and destroying its contents.

The plaintiffs offered evidence that the wall was complete up to the third story of the defendants' building, and that the floor of the fourth story had been laid; that the rear wall of the fourth story and the north wall which fell had been completed, except for a few feet from the front, which was left until the front, which was intended to be of a more ornamental character, should be built at a later time; that the south wall, about two thirds into which the trusses were built, was at its full height, and the rest nine feet high; that the side walls of the fourth story were ninety feet in length, twelve feet in height, and about fifty feet above the ground; that there were no stays or supports of any kind to the north wall, except two trusses which were for the support of the roof, and which had been put in by the carpenter with whom the defendants had contracted to do the wood work upon the building, which stretched across the building and were anchored into the north and south walls; that the wall which fell was blown over by the wind; that ordinary prudence required that it should have been secured by stays at intervals of about ten feet, and that, if so properly stayed, the accident would not have happened; that the attention of two or three persons was drawn a day or two beforehand to the dangerous condition of the wall, and one of them, an architect, called the attention of one of the contractors to the danger; and that the defendants passed the building daily and were in it frequently, and Cherrington, their architect, was daily about the building, and that they and he had means of knowing and preventing the danger.

The defendants contended, and offered evidence tending to show, that the wall was built when the weather was extremely cold, the thermometer being below zero, so that the mortar froze as soon as laid; that there came suddenly a day and night of very warm weather, which softened the mortar and destroyed its tenacity, so that it could not support the weight of the bricks, and the wall was thereby crushed; that the night was still; and

that no braces or stays, or other reasonable precaution, would have prevented the accident, which could not have been foreseen or expected.

The plaintiffs contended that, if the defendants' theory as to the cause of the accident was correct, the defendants were guilty of negligence in building the wall in such extremely cold weather.

Both the defendants and the contractors who had charge of the work testified that the defendants in no way exerted any control over the contractors, or gave any directions as to the construction of the building. It appeared that the wood work upon the building was going on at the same time with the construction of the brick work; that the carpenters had laid the floors of the different stories, including that of the fourth story, and had inserted in the north wall two trusses, which were part of the structure intended to support the roof; and that the firm of masons had done under their contract everything which they were required thereby to do to that portion of the north wall extending from the part left to receive the front wall, and the architect had surveyed and estimated the work on the north wall, and given a certificate therefor on December 1. There was evidence that some work was done on the wall by the masons after December 1.

The defendants contended that, after the commencement of the party wall, five flues were built therein at the request of and for the accommodation of the plaintiffs, and were put in under a special arrangement with the contractors, as the defendants refused to cause them to be put in, on the ground that they were not bound so to do under the indenture. It was a matter of serious controversy in the case, whether the insertion of these flues weakened the wall and contributed to cause its fall; and, in connection with that controversy, the plaintiffs contended that, under the indenture, the defendants were bound to put in these flues according to the " custom in regard to party walls in said city of Worcester." This the defendants denied. The plaintiffs put to a witness called by them, and who was admitted to be an expert in such matters, the question, " Are party walls in Worcester usually constructed with flues for the accommodation of the adjacent estate?" To this question the defendants objected, on the

ground that its answer affirmatively would not be proper proof of a custom such as was intended in the indenture. The judge ruled that the indenture did not require proof of a technical custom, and permitted the question to be answered. The witness answered affirmatively.

The defendants asked the judge to rule that, on the evidence as to the relation of contractors and contractees existing between the defendants and the firm of masons, the plaintiffs were not entitled to recover against the defendants. The judge refused so to rule, but instructed the jury that if the plaintiffs had proved that the accident was caused by such negligence as they contended, the defendants would be liable, notwithstanding such negligence was the negligence of the firm of masons in executing their contract. The jury returned a verdict for the plaintiffs; and the defendants alleged exceptions.

*W. S. B. Hopkins,* for the defendants.

*G. F. Hoar & T. L. Nelson,* for the plaintiffs.

GRAY, C. J. By the indenture between the plaintiffs and the defendants, either party was authorized to build a party wall of brick with stone foundation, half on the land of each, and half the cost of which should be paid by the other if he used it. The defendants made a contract with a firm of masons, by which the latter were to furnish all the materials and labor in completing the stone and brick work, lathing and plastering, according to the plans and specifications and under the superintendence and to the acceptance of an architect, who was called in this contract and was in fact the agent of the defendants. The masons built the party wall, ninety feet long and fifty feet high, and did everything that they were required by their contract to do to it; the architect surveyed and estimated the work, and gave them a certificate therefor, which, by the contract, entitled them to receive three fourths of the amount already due them, under the contract, for labor and materials; and carpenters employed by the defendants put in the timbers of the floors and some of those required to support the roof. After the wall had been so com pleted by the masons and accepted by the defendants, it fell, and crushed the building and property upon the adjoining lot of the plaintiffs.

There was evidence tending to show that the fall of the wall was occasioned by negligence in building it without sufficient stays or supports, or in building it in such cold weather that the mortar froze as soon as laid and was afterwards softened by a sudden thaw. The jury were instructed that if the accident was caused by such negligence, the defendants would be liable, although it was the negligence of the masons in executing their contract. We are of opinion that this instruction was sufficiently favorable to the defendants.

The general rule of law, stated by Mr. Justice Blackburn in delivering the unanimous judgment of the Court of Exchequer Chamber, in *Fletcher* v. *Rylands*, L. R. 1 Ex. 265, 279, affirmed by Lord Cairns and Lord Cranworth in the House of Lords in the same case, L. R. 3 H. L. 330, 339, 340, and approved by this court in *Shipley* v. *Fifty Associates*, 106 Mass. 194, 198, is that " the person, who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril; and, if he does not do so, is *primâ facie* answerable for all the damage which is the natural consequence of its escape."

This rule has been applied to dangerous animals; 1 Hale P. C. 430; *Cox* v. *Burbridge*, 13 C. B. (N. S.) 430; to cesspools; *Tenant* v. *Goldwin*, 1 Salk. 21, 360; *S. C.* 2 Ld. Raym. 1089, and 6 Mod. 311; *Ball* v. *Nye*, 99 Mass. 582; to artificial reservoirs of water; *Fletcher* v. *Rylands*, above cited; *Gray* v. *Harris*, 107 Mass. 492; and to accumulations of snow and ice upon a building by reason of the form of its roof; *Shipley* v. *Fifty Associates,* above cited.

The only exceptions to the liability, which have been judicially recognized, are in case of the plaintiff's own fault, or of *vis major*, the act of God, or the acts of third persons, which the owner had no reason to anticipate. *Fletcher* v. *Rylands*, L. R. 1 Ex. 280, and L. R. 3 H. L. 340. *Nichols* v. *Marsland*, L. R. 10 Ex. 255, and 2 Ex. D. 1. *Humphries* v. *Cousins*, 2 C. P. D. 239. *Mahoney* v. *Libbey*, 123 Mass. 20. In *Fletcher* v. *Rylands*, it was found, in the case stated, that " for the selection of the site, and for the planning and construction of the reservoir, it was necessary that the defendants should employ an engineer and contractors; and they did for those purposes employ a com-

petent engineer and competent contractors, by whom the site was selected, and the reservoir planned and constructed; on the part of the defendants themselves, there was no personal negligence or default whatever; but reasonable and proper care and skill were not exercised by the persons they employed, to provide for the sufficiency of the reservoir to bear the pressure of water which, when filled to the height proposed, it would have to bear." And it was unavailingly argued by Mr. (afterwards Lord Justice) Mellish, that the defendants were not liable for the negligence of contractors employed by them. L. R. 1 Ex. 268, 269, 276.

An owner of land has the same duty to keep on his own land a house or wall built thereon, as the filth in his cesspool, or the water in his reservoir, or the snow and ice upon his roof. His duty is, in the words of Baron Parke, "to keep it in such a state that his neighbor may not be injured by its fall." *Chauntler* v. *Robinson*, 4 Exch. 163, 170.

In *Nichols* v. *Marsland*, Baron Bramwell said : "What is the difference between a reservoir and a stack of chimneys for such a question as this ? Here the defendant stored a lot of water for her own purposes; in the case of the chimneys some one has put a ton of bricks fifty feet high for his own purposes; both equally harmless if they stay where placed, and equally mischievous if · they do not." "I admit that it is not a question of negligence. A man may use all care to keep the water in, or the stack of chimneys standing, but would be liable if through any defect, though latent, the water escaped or the bricks fell." L. R. 10 Ex. 259, 260. See also *Tarry* v. *Ashton*, 1 Q. B. D. 314; *Bower* v. *Peate*, 1 Q. B. D. 321; *Gray* v. *Boston Gas Light Co.* 114 Mass. 149.

The present case does not require us to decide whether it is more accurate to say that it is not a question of negligence and that the defendant is liable even in case of latent defect; or to say that the fall of the wall, in the absence of proof of inevitable accident or of the wrongful act of third persons, is sufficient evidence of negligence. See *Ball* v. *Nye*, and *Shipley* v. *Fifty Associates*, above cited; *Kearney* v. *London & Brighton Railway*, L. R. 5 Q. B. 411, and L. R. 6 Q. B. 759; *Mullen* v. *St. John*, 57 N. Y. 567. As was well observed by Mr. Justice Lush, in

*Tarry* v. *Ashton*, negligence is a relative term, depending upon the question, What is the duty of the defendant? 1 Q. B. D. 318. In the case at bar, the jury, under the instructions given, must have found negligence, either in the defendants themselves or in the masons employed by them to build the wall.

Assuming that the relation of the masons to the defendants was that of contractors, the former alone would be responsible to a third person for any injury caused by their negligence in a matter collateral to the contract, as, for instance, in depositing materials, handling tools, or constructing temporary safeguards, while doing the work; but where the very thing contracted to be done is improperly done, and causes the mischief upon the land of another, the employer is responsible for it, at least when it occurs after the structure has been completed to his acceptance. *Fletcher* v. *Rylands*, above cited. *Hole* v. *Sittingbourne & Sheerness Railway*, 6 H. & N. 488, 500. *Butler* v. *Hunter*, 7 H. & N. 826, 833. *Hilliard* v. *Richardson*, 3 Gray, 349, 353. *Chicago* v. *Robbins*, 2 Black, 418, 428. *Conners* v. *Hennessey*, 112 Mass. 96. *Boswell* v. *Laird*, 8 Cal. 469, 498.

The whole wall, when completed and accepted, was, by virtue of the indenture between the defendants and the plaintiffs, owned by the defendants until they should be reimbursed half the cost of it by the plaintiffs. *Richardson* v. *Tobey*, 121 Mass. 457. For the injury caused to property on the adjoining land by the falling of this wall, by reason of its defective and unsafe condition, whether owing to their own negligence or to that of the masons who had built it, the defendants are responsible.

The evidence objected to was rightly admitted. The indenture between the parties, in referring to " the custom in regard to party walls in the city of Worcester," evidently had in view not a technical custom, but the usual practice, like the previous clause in the same paragraph, which speaks of the ways and purposes in and for which " party walls are usually constructed."

*Exceptions overruled.*