Knoop vs. Alter.

<hr>

## No. 11,671.

### PAULINE KNOOP VS. C. E. ALTER.

The plaintiff was injured by the fall of defendant's wall.

The defendant denies negligence and alleges if the plaintiff suffered damages, the property was in possession of an insurance company for repairs.

*Held:* That there was negligence, and that whatever may have been the responsibility of the company during the time that repairs were made to a portion of the wall, the owner, aware of the defect and danger, who takes no part to prevent the accident, is liable for the damage occasioned by the fall.

The safety of walls in a populous city is a public interest, and the interest of plaintiff is blended with the public right that can not be subordinated to indefinite agreements between the insured and insurer. It is not shown that the property that caused the accident was included within the terms of the election to repair.

ON APPLICATION FOR REHEARING.—The settlement made and the loss adjusted on the policy of insurance harmonize with the views heretofore expressed.

Unexplained, there is difference between estimate of repairs and the amount of settlement, giving rise to the positive inference that the repairs were to be limited, as heretofore decided.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Joseph N. Wolfson, Lieven DePoorter, Lloyd R. Posey* and *Horace E. Upton* for Plaintiff and Appellant.

*H. H. Price* and *Branch K. Miller* for Defendant and Appellee.

The opinion of the court was delivered by

BREAUX, J. This suit was brought by the plaintiff against C. E. Alter and E. O'Rourke to recover damages occasioned her by the falling of a wall.

Owing to error in matter of citation the latter, O'Rourke, was not a party to the trial.

The plaintiff was employed as an operative by the " Gulf Bay Company " in its factory operated in the premises owned by Edward O'Rourke, Nos. 82, 84 and 86 South Peters street.

The defendant owned building numbered 80, separated from No. 82 by a dividing wall.

On the 23d of April, 1892, a fire occurred in buildings 74, 76 and 78, on South Peters street, adjacent to the property of the defendant. The fire damaged defendant's building No. 80. Subsequent to the fire the front portion, about forty feet of the party wall, between 78 and 80 South Peters street, fell.

The portion of that wall which was still standing on the 20th of June, 1892, fell, and caused the fall of the wall dividing 80 and 82, and injured plaintiff, who was at work in the building 82.

She was knocked down by the falling bricks, and buried in the debris of the fallen wall. She was extricated from the ruins by other operatives at the factory, and received a number of painful bruises. She was confined to her bed more than two months and continued an indefinite time under medical treatment. At the date of the trial her health was tolerably good, although she was subject to nervous attacks. She was, it seems, prior to the accident, disposed to hysteria, and one of her witnesses, a highly respectable

physician, who has devoted special attention to nervous diseases, testified:

"Whatever she may have suffered from personal injuries I know nothing of, but those injuries had nothing to do with her nervous condition except as aggravated by the shock."

There is testimony that the party wall which fell was in a defective condition, even prior to the fire. A witness who was familiar with the property testified:

Q. You say you called Mr. Alter's attention to the defects in that wall?

A. Yes, and he said it was a good strong wall.

Q. Did you tell him why you thought it was in a bad condition?

A. It was easily seen, it was badly cracked.

Q. Was it burned?

A. No.

Q. Was it an old wall?

A. It was an old wall.

Q. You say that even before the fire it was in bad condition?

A. Yes; it was necessary to shore up the joists—that is stanchions had to be placed under them.

In reference to the damage caused to the wall by the fire the testimony is conflicting.

The witness also states "that shortly after the fire, Mr. Alter and I went into the building. I called his attention to a crack in the wall. The wall was so badly cracked that the firm of which I was secretary had the joists shored up, which was done by their carpenter. Mr. Alter then made the remark that it did not amount to anything. I differed from him and told him that it was in a bad condition. Then he made the remark that I remember very well. 'That the wall was as strong as the works of Gibraltar.'" The defendant as a witness, on cross-examination, says that the witness only pointed out a blister on the wall a few feet from the front door.

That this portion of the wall fell, and that it did not occur to him that if that portion of the wall could fall, that it would be well to investigate and examine the other portions of the wall with the view of ascertaining whether or not it would stand.

The evidence shows that the defendant saw the wall a few hours previous to the accident; a witness testifies that he informed him of

the danger of its fall, and called his attention to a crack in the wall; another witness, a bricklayer, who had charge of the work of putting up that portion of the wall that had fallen, says: That the portion standing was in a dangerous condition and that the defendant urged him to hasten the work of putting up the fallen portion.    A short time subsequent it fell and caused the accident.    The defendant was insured with the Home Insurance Company of New Orleans. By the terms of his policy that company agreed in the event the building insured should be destroyed or damaged by fire to pay to the insured the amount of the loss or repair, or rebuild the building.

After the fire the insurance company elected to repair the loss caused by fire.

The builder employed by the insurance company to make repairs, and who examined the property after the fire, was not called as a witness by the defendant, and did not testify.

The bricklayer in charge and the principal carpenter were examined as plaintiff's witnesses, and testified as to the unsafe condition of the wall.

The defendant denied any liability, and averred further that if the plaintiff suffered damages the buildings were not in his possession or control.

The president of the insurance company and the defendant testify that they were in possession of the company which had taken charge of the repairs.

The cause was tried in the lower court without the intervention of a jury.

Judgment was rendered for defendant, from which the plaintiff appeals.

That there was negligence in not guarding against the danger of the wall falling is amply sustained by the facts.    None of the witnesses, except the defendant, testify that it was a safe wall.

The fact that the insurance company in which the building was insured had commenced, a few days previous to the accident, to rebuild the forty feet of party wall which had fallen a short time after the fire, and to that end had taken possession of the building, presents the only question left for our determination.

Primarily, every one should keep his building in repair, so that damage may not be occasioned by its ruin.    C. C. 670.

It is not shown by the evidence that the insurance company had undertaken to repair the wall which caused the damage.

On the contrary, the repairs were limited to the front portion, the forty feet that had previously fallen. The contract between the insurance company and the builder was to rebuild from the front to the rear, a distance which did not include the standing wall, from which contract it does not appear that the defendant withheld his assent. If it extended to other repairs, we have not found the testimony of record. But he, at the time, urged the brickmason, who was working under the terms of the contract, to hasten with the work of closing the wall; and on another occasion he declared in emphatic terms that the standing portion was solid.

The defendant sets up in defence that an owner who has contracted with a capable undertaker to repair, has done all that he could do.

This applies to the repairs proper.

The contractor must answer for his own repairs and not for the work of others.

As to the latter, it is not part of his obligation. We are not led by the testimony to infer that the insurance company owed other repairs than those it is shown it had undertaken to make.

But assuming that the relation was that of contractor, the owner as well as the contractor would be responsible to a third person for any injury by his negligence in a matter not clearly included in the contract. This principle was followed in a case presenting similar points to the case under consideration. Gorham vs. Gross, 125 Mass. 232.

In Walker vs. McMillan, 6 Can. S. C. R. 241, it was decided "if a damage is caused by the fall of a wall in putting up a building forbidden by ordinance, both owner and contractor are liable."

In the case of Insurance Company vs. Werlein, 42 An. 1047, 1053, this court gave its sanction to the principle that the owner whose property is in the hands of the assurers must reasonably exert himself to prevent damages.

The dual responsibility of the employer and the contractor is recognized in Davie vs. Levy & Sons, 39 An. 555, in which the cases of Robins vs. Chicago City, 4 Wallace, 679; 23 Pickering, 24; 17 N. Y. 104, and 16 Wallace, 567, are approvingly cited.

In France, on this point, the laws are more favorable to the pro-

prietor and greater responsibility is imposed upon the architect and the contractor.

Nevertheless, there, as it is here, the proprietor of a building is responsible for the damages caused by its ruin when due to defective construction.

The owner of the damaged property has a right of action against the proprietor and the latter has the right to sue the architect or contractor.

The proprietor selects the architect and contractor he wishes to employ, and can make such stipulations as he deems proper to protect his interest; whereas the neighbors are strangers to the agreement between the architect and the employer; the law is alive to their interest, it being blended with the public interest. Laurent, Vol. 26, p. 76; Aubry et Rau, t. 4, p. 534, and note 32, par. 374; Dalloz, 1866, Sec. 294.

The question being general, the safety of persons can not be made subordinate to verbal and indefinite agreements between the insurer and the insured. With reference to the amount of damages, we are confronted by the usual difficulties in such cases.

There is no positive evidence on which to base an estimate.

The evidence shows that plaintiff's ailment is not incurable; the accident aggravated the illness to which she was disposed.

Her daily earnings were small.

After considering the decisions of the court regarding amounts allowed as damages for injuries received, we think that fifteen hundred dollars should be allowed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed.

It is now ordered, adjudged and decreed that plaintiff have judgment against and recover of the defendant the sum of fifteen hundred dollars, with legal interest from the date of this judgment, and that defendant pay costs of both courts.

## ON APPLICATION FOR A REHEARING.

With more than ordinary care we have re-examined the facts of this case.

We have not found any reason to change our previously expressed opinion.

Our attention was arrested by the following:

(We extract from the policy of insurance, which the appellee makes the basis or his defence.)

" Against loss or damage by fire to the amount of five thousand dollars on the three-story brick slated building, with iron shutters front and rear; situate  *  *  *  .  July 1, 1892.  Canceled, loss paid, three thousand dollars."  While the estimate of the work was less than one thousand five hundred dollars.

This settlement has heretofore received but little, if any, attention.

We leave the subject with the statement that, without explanation, it seems to bear against the contention of the appellee.