Bradbury, C. J.
The cause was submitted to the court of common pleas on the following agreed statement of facts:
“It is hereby stipulated that this case will be submitted to the court upon the following statement of facts as the evidence in this case:
“Plaintiff is a corporation organized under the laws of Ohio, and the owner of real estate whereon buildings are erected in the village of St. Marys,. Auglaize county, Ohio, and was such at all times, stated in the petition filed in this action.
“The defendant is a partnership organized for the purpose of doing business in the state of Ohio and owning property therein.
“On or about January 25, A. D. 1896, the defendant was the owner of a magazine and contents con *566 taining about fifty quarts of nitroglycerine used by tbe defendant in its business of manufacturing, storing and vending nitroglycerine, which magazine was situated on a tract of land belonging to one W. G. Kishler, and situated something over a mile west of the buildings so owned by the plaintiff in St. Marys, Ohio, and situated about one-fourth (i) of a mile distant from the corporation line of the village of St. Marys, Auglaize county, Ohio.
“That on or about said twenty-fifth day of January, A. D., 1896, while one of the defendant’s servants was upon the premises upon which said maga zine was located engaged in transferring about seven hundred and fifty (750) quarts of nitroglycerine from a wagon loaded with same to said magazine, the said nitroglycerine stored therein, and also the same upon the wagon aforesaid, from some cause unknown to said defendant, exploded with great force and concussion causing vibrations in the atmosphere sufficient in power and violence to break, shatter and destroy three (3) plate glass and three (3) common glass in the buildings owned by the plaintiffs aforesaid of the value of two hundred and forty-four dollars and ten cents ($244.10) by reason of which explosion and the breakage of said glass the plaintiffs were injured and damaged to the extent aforesaid.
“That nitroglycerine is a dangerous substance and likely to explode. That demand of payment ■of said sum has been made by the plaintiff to the defendant and payment thereof has been refused.”
This agreed statement of facts does not show •that the plaintiff in error violated any statute of the state or was in any degree negligent in handling or storing the explosive substance involved. It was nitroglycerine, a well known and highly *567 explosive agency, which the agreed statement of facts shows “is a dangerous substance and likely to explode.” Is one who brings upon his own premises such agency liable for damages caused by its exploding, although such owner is not chargeable with either want of care or an unlawful act in connection with the casualty? This exact question has not heretofore been considered by this court, although a number of cases have been decided by the court that bear a general resemblance to it. Gas Fuel Co. v. Andrews, 50 Ohio St., 695; Defiance Water Co. v. Olinger, 54 Ohio St., 532; Tiffin v. McCormick, 34 Ohio St., 638. Tbe tendency of these cases is towards holding the parties charged with the management of dangerous substances to ,a strict liability. In Tiffin v. McCormick, 34 Ohio St., 638, this court held: “Where the owner of a stone quarry, bjr blasting with gunpowder, destroys the buildings of an adjoining land owner, it is no defense to show that ordinary care was exercised in the manner in which the quarry was worked.” And the same view of the liability of one who by blasting rocks cast fragments thereof against the house of another, was taken by the Court of Appeals of New York in the cases of Hay v. The Cahoes Co., 2nd N. Y., 159, and Tremain v. The Cahoes Co., ib., 163. The court in the first case decided that: “The defendants, a corporation, dug a canal upon their own land for the purposes authorized by their charter. In so doing it was necessary to blast rocks with gunpowder, and the fragments were thrown against and injured the plaintiff’s dwelling upon lands adjoining. Held, that the defendants were liable for the injury, although no negligence or want of skill in executing the work was alleged or proved.” And *568 in the second case that: “The defendants dug a canal upon their own land, and in executing the work blasted the rocks so as to cast the fragments against the plaintiff’s house on contiguous lands. Held, in an action on the case brought to recover damages for the injury, that evidence to show the work done in the most careful manner was inadmissible, there being no .claim to recover exemplary damages, and the jury having been instructed on the trial to render their verdict for actual damages only.”
Counsel for plaintiff in error contend that in respect of the matter under consideration the analogy between the act of blasting rock on one’s premises and storing a dangerous explosive thereon is not close. In the one case the damage is caused by fragments of rock being hurled upon or against the property injured, while in the other case the damage is caused by violent atmospheric vibrations from the explosion. If, however, the explosion caused fragments of thebuilding wherein the explosive material was stored, or other solid substance, to be thrown against the property injured, thereby producing damage, the analogy might be more easily perceived. True it might be said that in the one case the party to be charged was actively engaged in the work that caused the injury, while in the other case he was simply using the premises to store the dangerous substance, not intending that it should explode. These distinctions, however, do not seem to be material. The right of the owner of a stone quarry to blast rock therefrom where that is necessary to a profitable use of his property, or the right of one to make an excavation of any kind on his own property where blasting is a proper and usual mode to *569 accomplish the owner’s purpose, would seem to be of as high and perfect a character as is the right of an owner to use his premises as a storehouse for explosive substances.' Upon what principle should an owner of property hold it subject to the right of another to store on his own premises adjacent to it nitroglycerine, but not subject to the right of that other to blast rock? If one may store nitroglycerine on his own premises and not be liable to adjacent property for damages caused by its exploding unless he has been negligent, while in the case of the owner of the quarry the latter is liable for an injury to an adjacent property resulting from blasting, although free from negligence, then it is plain that the adjacent proprietor holds his. property in the one case subject to the right of his neighbor to store a dangerous explosive, but not to the right of his neighbor to blast rock. In the first supposed case, the liability grows, not out of the storing of the dangerous explosive, but out of the negligence of the person storing it, while in the last supposed case, the liability springs from the manner in which the property is used, i. e., the blasting, and negligence need not be shown. If in the latter instance the party blasting is liable for injuries that resulted from his act, however careful he may have .been, the reasons for absolving the former from liability, unless he has been negligent, are not apparent. The blasting doubtless is a menace to adjacent property, but so is the storing of a highly explosive substance.
In this ease the premises on which the explosive substance was stored and the premises on which the building stood that was injured do not appear to have been adjacent. They were a mile apart, and for anything that appears in the record, many *570 parcels of real estate owned by third persons may have intervened. That, however, does not seem to be material either. One who in blasting rock should cast fragments across a strip of adjacent land owned by a third person against the windows of a more remote proprietor would hardly be heard to say in defense of his act that the property injured was not adjacent. Whatever duty he owed to his neighbor extended equally to all who might fall within the lines of danger. So it would seem that in the case of explosives, the right of all within the circle of danger should be equal, irrespective of whether the property injured was adjacent to the premises upon which the material was stored.
The liability of one who for his own purpose brings upon his own premises substances dangerous to others, if not kept under control, was exhaustively discussed by the judges of England in the case of Fletcher v. Rylands, 1 Exch. L. R., 265, and afterwards on a review of the case in the House of Lords, L. R., 3, H. L., 330.
■ — -Iruth^ Exchequer Chamber Justice Blackburn in giving judgment employed the following language: “ We think that the true rule of law is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff’s default; or perhaps that the escape was the ■consequence of vis mayor, or the act of God; but as nothing of this sort exists here, it is unnecessary ■to inquire what excuse would be sufficient. The general rule, as above stated, seems on principle *571 just. The person whose grass or corn is eaten down by the escaping cattle of his neighbor, or whose mine is flooded by the water from his neighbor’s reservoir, or whose cellar is invaded by the filth of his neighbor’s privy, or whose habitation is made unhealthy by the fumes and noisome vapours of his neighbor’s alkali works, is damnified without any fault of his own; and it-seems but reasonable and just that the neighbor, who has brought something on his own property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if he gets on his neighbor’s, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing- it there no mischief could have accrued, and it seems but just that he should at his peril keep it there so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority, this we think is established to be the law whether the things so brought be beasts, or water, or filth, or stenches.”
This language was approved in the House of Lords when the cause came up for consideration there, Lord Cranworth saying: “My Lords, I concur with my noble and learned friend in thinking that the rule of law was correctly stated by Mr. Justice Blackburn in delivering the opinion of the Exchequer Chamber. If a person brings, or accumulates, on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape, and cause damage, he is responsible, however careful he may have been, and whatever precautions he may have taken to prevent the damage.”
*572 The doctrine in this case (Rylands v. Fletcher, supra) has not been accepted by some of the courts of this country. Marshall v. Welwood, 38 N. J. L., 339; Swett v. Cutts, 50 N. H., 439; Pennsylvania Coal Co. v. Sanderson, 113 Pa. St., 121; Losee v. Buchanan, 51 N. Y., 476; but has been approved in Shipley v. Fifty Associates, 106 Mass., 194; Gorham v. Gross, 125 Mass., 232; Meors v. Doll, 135 Mass, 510; Cahill v. Eastman, 18 Minn., 324.
In the case above cited from. New York, Losee v. Buchanan, 51 N. Y., 476, and that from New Jersey, Marshall v. Welwood, 38 N. J. L., 339, a!, casualty occurred from an explosion of steam ^ boilers. "■
To my mind the analogy between the act of storing so highly explosive and dangerous an agency as nitroglycerine on one’s premises and that of conducting a business thereon, which requires for its successful operation the use of steam, is not complete, although each is an explosive. Doubtless both are dangerous agencies, when control over them is lost. The use of steam has, however, so generally been employed in every productive industry that every owner of real property may reasonably be held to contemplate the contingency of its being employed upon adjacent premises, and to enjoy his property subject to that risk. In a great city like New York or Chicago, where numerous and varied industries are conducted, there are doubtless many thousands of places where steam is employed. The entire population of such a city is interested and most of them directly or indirectly benefited by these industries. Large numbers of them labor by day in factories where steam furnishes the motive power, and many of them sleep at night in buildings con *573 taining engines in active operation. The modern steam boiler and engine cannot be said to be such & menace to property and human life as to constitute a nuisance per se. They cannot as such be driven from the centres of population. Not so, however, with gunpowder and nitroglycerine. These latter agencies on account of their dangerous character may be, and usually, if not universally, are driven into the suburbs of towns and cities, remote from human habitations and valuable structures. Under the circumstances that surround the productive arts and industries of to-day a modification of the strict rule of liability in favor of those who employ steam in such arts or industries, may not be inconsistent with its assertion against those who store gunpowder and nitroglycerine, or blast rocks adjacent to the property of others. That public policy which seeks to secure the welfare of the many may demand such modification.
Whether upon such grounds or for any other reasons such a modification of the rule should •obtain in the case for the use of steam is not, of course, before the court, and the question is only considered in this brief way to show that there may be no irreconcilable conflict between the cases that have absolved the owners of boilers from liability for the consequences of an explosion occurring without their fault, and the conclusions reached by us in the case under consideration. Doubtless gunpowder, nitroglycerine and other dangerous explosives are useful agencies in many industries, as well as steam, but conceding that in the case of steam boilers the extensive and varied uses to which steam is devoted, the comparatively slight danger arising from its use, require on *574 principles of public policy, which regards the interests of the great body of the people, that every owner of real property should be held to possess-it subject to the right of his neighbor to erect a manufactory and employ steam on adjacent premises, yet it does not necessarily follow that such owner should possess his property also subject to the right of his neighbor to erect a powder or nitroglycerine magazine in his vicinity.
The existence of a manufacturing establishment^ although it employ steam as a motive power, may and doubtless is in many instances a positive benefit to real property in its vicinity, and instead of diminishing- may enhance its value, while on the contrary, the erection and use of a nitroglycerine magazine could have no other than a disastrous effect on the value of all real property in its vicinity. We think, therefore, the right to-maintain the former may be placed upon grounds that cannot apply to the latter. The general doctrine upon the subject stated in Fletcher v. Rylands, supra, seems to be just and fair in its-general operation. The syllabus of that case, as announced by the House of Lords, L. R. 3, H. L.,. 330, seems to recognize a distinction in this respect between an ordinary and an extraordinary use of his premises by their owner, and had that learned tribunal then had before it a case where-damages were sought on account of injuries resulting from an explosion of a steam boiler in a. manufacturing establishment, it might have denied the liability in the absence of proof of negligence, on the ground that the owner was using his premises in an ordinary manner.
But whatever might have been done by the-House of Lords in the case supposed, we are of the *575 opinion that the storing of nitroglycerine should be deemed to be an extraordinary and unusual use of property, and we can see no principle upon which an exception to the general doctrine laid down in Fletcher v. Rylands, supra, can be held to exist in favor of one who stores upon his own premises that or any other dangerous explosive..

Judgment affirmed.

Shauck, J., dissents.