## ANNA LAPPEN *vs.* ETHEL M. CHAPLIK.

Suffolk.     November 13, 1933. — December 29, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Landlord and Tenant*, Landlord's liability to tenant in tort, Repairs. *Agency*, Independent contractor.

A paper hanger, who was hired by the owner of an apartment house to paper certain rooms in a suite therein and who did such work in his own way without any direction by the owner as to how it should be done, was an independent contractor and not an employee of the owner.

At the trial of an action for personal injuries by a tenant of a suite in an apartment building against one who owned and controlled the building, there was evidence that an agent of the defendant told the plaintiff at the time of the letting that he "would keep the place in a safe and good condition," and "would always come up and see to all repairs," which would be made "without notice to him," that when people came to make repairs it was his "duty to see that the tenant was satisfied as near as he could," to examine the repairs when they were finished to see if they had been done properly and to see that the repair work "was cleaned up"; that the defendant hired an independent contractor to paper certain rooms in the plaintiff's suite; that the defendant's agent told the paper hanger "not to bother about cleaning up the waste" and that he would "clean up after" him; and that, after the paper hanger had finished his work and had left the premises, the plaintiff came into one of the newly papered rooms and fell upon a piece of wallpaper lying on the floor. The plaintiff did not contend that it was the defendant's duty to keep the suite clean and safe at all times so far as foreign substances were concerned. *Held*, that

(1) The agreement made by the defendant's agent as to repairs did not cover a temporary disorder of the floor such as was the cause of the plaintiff's injury;

(2) The promise by the defendant's agent to the paper hanger to "clean up after" him did not impose upon the defendant any duty which enured to the plaintiff;

(3) The plaintiff could not recover.

TORT. Writ dated June 8, 1929.

The action was tried in the Superior Court before *Goldberg*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged an exception.

*F. D. Harrigan*, for the plaintiff, submitted a brief.

*C. C. Petersen*, for the defendant.

PIERCE, J.    This is an action of tort wherein the plaintiff seeks to recover damages for injuries sustained on May 24, 1929, when she fell in her apartment in a building owned and controlled by the defendant.   The declaration alleges negligence of the defendant, her agents and servants.   The answer is a general denial and an allegation of contributory negligence.   At the conclusion of the plaintiff's evidence the defendant rested and presented a motion for a directed verdict. The motion was allowed by the judge and the jury as directed returned a verdict for the defendant.   The case is before this court on the plaintiff's exception to the allowance of the defendant's motion.

All the material evidence is contained in the bill of exceptions, and, taken in its aspect most favorable to the plaintiff's contention, warranted the jury in finding the following facts:   Upon the day of the accident the plaintiff was a tenant at will of an apartment in the defendant's building. She hired the apartment from one Mitchell, who was employed by the defendant.   His duties included the renting of the suite occupied by the plaintiff and the collection of the rent therefor.    When Mitchell showed the plaintiff the apartment, she said to him "that the paper in the front room looked dirty and that there was a crack in the plaster near the window," and Mitchell said "he would have the room papered and that anything that would have to be done he would attend to and would keep the place in a safe and good condition"; that "he was always around there."   He said he had been there a long time working for Mrs. Chaplik, ever since the building was built; that everything that had to be done he was in charge to do it, and the plaintiff "would never need to worry"; that "he would always come up and see to all repairs"; that "the repairs would be made without notice to him"; and that as to the place the plaintiff spoke about it would be papered at some future date.

The jury on the evidence would have been warranted in finding in "reference to repairs" that Mitchell said that when people came to make repairs it was his "duty to see that the tenant was satisfied as near as he could"; that paperers came from time to time to do work on the property

and they were paid by the defendant; that when paperers came in it was his duty to show them the work to be done, and, when the work was done, to look it over to see if it was done right; and then, if the work was not satisfactory to the tenants, he would speak to the paperers about it and have it remedied; "that it was a part of his duty" to see that the work "was cleaned up"; and that then he would report to the owner as to what condition they had left it — "if it was right there would be no report, if it was wrong there would be a report."

The evidence warranted the jury in further finding that at a time before the accident the defendant went to the place of business of the firm of Raskind and Fishman, paper hangers and dealers in wallpaper, and picked out and purchased wallpaper and engaged Raskind and Fishman to paper two rooms and a reception hall in the plaintiff's suite; that on the day of the accident they started to do the work of paper hanging at about eight o'clock and finished the work at about eleven thirty; that Mitchell came into the apartment while the paper hangers were working and told them "to do a good clean job" but did not say anything about cleaning the place; that Friday "was cleaning up day"; that one of the men had to place boards outside in the main hallway and another board was set up in the room to be papered; that Mitchell "told them . . . it was cleaning up day and . . . he would be glad to have them through by one o'clock," and he said to Raskind to let him know when they were through, that "he has to clean up"; that the paperers replied that they would get out between eleven and eleven thirty at the latest, and Mitchell said "go ahead with the papering and I will clean up after you"; that Mitchell "came up a little before eleven and brought a basket to put the paper in"; that when Mitchell told the paperers "to go ahead and finish the hanging of the paper and he would clean up after them" the paperers were putting heavy pieces of paper into the basket which Mitchell had placed for them in the middle of the floor in the front room; that Mitchell told the paperers "not to bother about cleaning up the waste"; that there were newspapers on the floor when the paper

hangers got there. Raskind testified that he picked up the trimmings of paper that fell to the floor in the room which was papered so far as he saw them, but he might have skipped some. The evidence warranted a finding that the work of hanging the paper was finished at about eleven thirty; that the paperers looked for Mitchell but did not find him anywhere about; and that after they left, the plaintiff, at about one o'clock, entered the living room and, without seeing it, fell on a piece of wallpaper.

The evidence for the plaintiff disclosed that the firm of paper dealers who individually did the practical work of hanging the wallpaper in the plaintiff's apartment, while employed by the defendant to do the work, did it in their own way without any direction by the defendant as to how it should be done. This fact makes it plain that the paperers, Raskind and Fishman, were not servants of the defendant, but were independent contractors. *McDermott's Case*, 283 Mass. 74, 77. Assuming them to be such, in the circumstances here disclosed the defendant was not liable for any act of the paperers causing harm to the plaintiff which was merely incidental to the work covered by their undertaking. *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91. *Regan* v. *Superb Theatre, Inc.* 220 Mass. 259. It is not contended by the plaintiff that the defendant was obliged to keep the apartment at all times clean and safe so far as foreign substances on the floor were concerned, but it is her contention that any obstructions or substance which was deposited upon the floor, either by the defendant's agents or by an independent contractor doing the defendant's work, imposed a liability upon the defendant if it created a dangerous condition which was not seasonably removed. It is further contended that the piece of wallpaper under which there was paste might well be found by the jury to have amounted to a source of danger, and the jury might have found that under the defendant's agreement the paper in question should have been removed by some one acting in behalf of the defendant, before the time of the plaintiff's injury. In a word, the plaintiff's contention appears to be that the slip of wallpaper upon the floor constituted a nui-

sance, which was created by the paper hangers, and which was required to be abated by the defendant if it existed after the paperers had finally left the apartment of the plaintiff without a purpose to return and further clean it. *Sturges* v. *Theological Education Society*, 130 Mass. 414. *Gorham* v. *Gross*, 125 Mass. 232, 240. We do not think the agreement to keep the premises in repair covered the temporary disorder of the floor shown to exist by the evidence. Nor do we think the promise of Mitchell to the paperers, to clean up the apartment of its disarray caused by the work done, was a promise which imposed any duty on the defendant which enured to the plaintiff.

*Exceptions overruled.*