ELIZABETH B. MURPHY, administratrix, *vs.* THERESA LALLY & another.

JOHN J. COLEMAN *vs.* SAME.

Suffolk.  March 9, 1899. — May 18, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Illness caused by Defective Drain — Negligence.*

In an action for injuries occasioned to two plaintiffs by the failure of the defendant to repair a defective drain on his premises, which adjoined those of the plaintiffs, it appeared that the drain had been effectively plugged up so as to stop the discharge of water before it was shown to the defendant who was notified; that after this plugging and the removal of the water with which the plaintiffs' basement was then flooded, and until long after the plaintiff in the first case was taken ill, there was no further flooding of the basement, no further notice or complaint to the defendant, and no evidence to warrant anything but a conjecture that the drain continued to discharge water which could affect the plaintiffs' premises, and the illness of the plaintiff in the second case did not occur until many months after the first flooding. *Held,* that the evidence would not justify a finding that the defendant was negligent, or that the plaintiffs' illness was due to the drain. *Held, also,* that some evidence as to whether, after the second flooding, which was two years after the plugging, a conductor which took rain-water from the roof down the exterior wall of the defendant's house was found so to discharge it into the ground that the water could percolate through the soil into the plaintiffs' basement would not justify a finding that the defendant was negligent with reference to the conductor, or that the plaintiffs' illness was occasioned by the presence on the defendant's premises of water from the conductor.

TWO ACTIONS OF TORT, for injuries occasioned by the alleged negligent failure of the defendants to repair a defective drain on premises owned by them. Trial in the Superior Court, before *Dewey,* J., who, at the close of the testimony and at the request of the defendants, directed the jury to return a verdict for the defendants in each case; and the plaintiffs alleged exceptions, which appear in the opinion.

*F. F. Sullivan,* for the plaintiffs.

*R. W. Frost,* for the defendants.

BARKER, J. The original plaintiff in the first case was Mary F. Murphy, now deceased, the suit being now prosecuted by her mother as administratrix. Mary F. Murphy and Coleman, the plaintiff in the second action, lived with Daniel Murphy as members of his family in a tenement No. 66 Bolton Street, which was one of five tenements in a block. No. 64, a tenement owned by the defendants, in the block adjoined No. 66, and was separated from it by a board partition one inch and a half thick. The declarations allege that from September, 1893, the defendants' drain was in a bad condition, out of repair and dangerous; that the defendants were notified to repair the same and did so in a negligent and improper manner; that they negligently refused to make other necessary repairs about the drain, which they were notified and requested to make and were bound to make; and that knowing the defective condition of the drain they neglected to repair the same. The declaration in the first case further alleges that Mary F. Murphy, being ignorant of the improper and dangerous condition of the drain, and in the exercise of due care, by reason of the defendants' negligence contracted typhoid fever on or about July, 1895, which with its consequences is the damage alleged. The declaration in the second case has similar allegations on the part of Coleman, who is alleged so to have contracted typhoid fever on or about August 1, 1894.

The cases were tried together in the Superior Court, and the court at the close of the evidence ordered a verdict in each case for the defendants.

It appeared that there was an old unused drain with plank bottom and top and brick sides beneath the soil under the floor of the basement of No. 64, which extended to within about four inches of the partition between No. 64 and No. 66, and

which was there when the drains which were in use in all the five houses in the block were originally built. It was not shown that any of the parties knew of the existence of this old drain until September, 1893, when the basement of No. 66 was flooded with water to the height of several inches above the floor, and which was in part baled out and in part drained off by making openings into the drains in use, beneath the basement floor, the water being so removed in about two days. This water came from behind the board partition between No. 64 and No. 66. Daniel Murphy then dug down under the board partition and found the open end of the old drain, from which dirty water was flowing. He plugged up the open end of the drain and a week later replaced the flooring in No. 66. During this week there was no water in his basement, and it was gradually drying up. While the basement was flooded, and after the end of the old drain had been plugged, one of the defendants was notified, and visited No. 66, and was told that the water had come from the open end of the old drain, and the evidence tended to show that he said that he would look the matter up on his side and fix it all right, and that he never did do anything to the old drain. From the time the basement was flooded in September, 1893, until August, 1894, there was always a bad odor in the basement of No. 66, which smelled like filthy rotten water, and the basement was always damp. In October, 1895, the basement was again flooded. Thereupon the board of health ordered the flooring taken up in Nos. 60, 62, and 64, and the old drain was found to extend from No. 60, where it had an open end, through No. 62 into No. 64, and its top throughout its entire length was rotten and out of repair, and some three feet from its open end in No. 60 was a broken waste pipe from which water flowed out on to the soil and thence into the open end of the old drain.

We are of opinion that the verdicts for the defendants were rightly ordered. After the plugging of the end of the drain in September, 1893, and the removal of the water with which the basement was then flooded, and until long after the plaintiffs were taken ill, there was no further flooding of the basement of the house where they lived, no further notice or complaint to the defendants, and no evidence to warrant anything but a con-

jecture that the old drain continued to discharge water which could affect the tenement where the plaintiffs lived. The drain had been effectively plugged up so as to stop the discharge of water before it was shown to the defendants who were notified. The illness of Coleman did not occur until ten months after the first flooding of the basement, while that of Mary F. Murphy did not occur until more than a year thereafter, or almost two years after the first flooding. The evidence would not justify a finding that the typhoid fever was due to the flooding of the basement, or that the first flooding of the basement was due to the defendants' negligence, nor was there evidence to justify a finding that the drain continued to discharge water into the soil adjacent to No. 66, after it was plugged in September, 1893. There was some conflicting evidence upon the question whether, after the second flooding in 1895, a conductor which took rain-water from the roof down the exterior wall of No. 64 was found so to discharge it into the ground that the water could percolate through the soil of No. 64 into the basement of No. 66; but this evidence would not justify a finding that the defendants were negligent with reference to the conductor, or that the illnesses which were the grounds of damage were occasioned by the presence in No. 66 of water from the conductor.        *Exceptions overruled.*