Yette Pearl *vs*. G. Faunce Whitcomb, administrator.

Suffolk.   November 16, 1917. — January 5, 1918.

Present: Rugg, C. J., Braley, Crosby, Pierce, & Carroll, JJ.

*Drain*, Private.  *Municipal Corporations*, Order to connect with sewer.  *Boston.*

Where one of a number of landowners who had the right to use in common a private drain continued to use it for many years after all the others having the right had made connections with a public sewer and had ceased to use the private drain, this does not make the person who continued to exercise his right to use the drain liable for damage to property from an overflow of waste water from the drain, which was due wholly to the act of a third person who built a foundation wall across the drain and which was not due to any negligence on the part of the person who continued to use the drain.

It here was *said* that an order of the health department of Boston, addressed to a landowner who has been using a private drain, ordering him to make a connection with the public sewer in the adjoining street, does not require him to abandon the use of the private drain, where the order contains no prohibition of its use.

Tort originally against Emma C. Whitcomb of Boston, trustee under the will of Harlan P. Whitcomb of that city, who died on November 14, 1913, for damage done to a stock of boots and shoes belonging to the plaintiff by water which overflowed upon them in the basement occupied by the plaintiff in the building numbered 15 on Albany Street in Boston, the overflow being alleged to have been caused by the negligence of the defendant

in permitting a private drain in the rear of that building to become choked. Writ dated April 21, 1915.

On December 12, 1916, a suggestion of the death of Emma C. Whitcomb was filed, and an order of court was made admitting the administrator of her estate as the defendant.

In the Superior Court the case was tried before *Dana,* J. The evidence is described in the opinion. The judge ordered a verdict for the defendant and reported the case for determination by this court, with the stipulation that, if the judge was wrong in ordering the verdict, judgment was to be entered for the plaintiff in the sum of $3,000; otherwise, judgment was to be entered for the defendant on the verdict. A further stipulation in regard to the exclusion by the judge of the release referred to in the opinion has become immaterial.

*J. B. Jacobs,* for the plaintiff.

*J. H. Devlin, Jr.,* for the defendant.

CARROLL, J. In January, 1914, the plaintiff occupied the basement of the building No. 15 Albany Street, Boston, and a quantity of shoes belonging to her were damaged by water overflowing from a private common drain in the rear of her tenement. At this time the real estate numbered 7 Albany Street was owned by the defendant's intestate, Emma C. Whitcomb, as trustee under the will of Harlan P. Whitcomb, who died November 14, 1913. The drain ran in the rear of both No. 7 and No. 15 Albany Street, in an alley or passageway extending to the premises No. 31 Albany Street, where it turned "at right angles in the rear of No. 31, and passing by No. 31 at the right, and entering the public sewer at the Kneeland Street end." There was evidence that the waste water coming from the defendant's building entered the drain and overflowed into the tenement of the plaintiff. There was no direct evidence that the property numbered 31 Albany Street was connected with this drain, and there was no evidence that it was connected with the Albany Street or Kneeland Street sewer, although there was evidence that an application had been made at one time by the person in possession of this property to enter the public street sewer, but the application was returned and the books of the city sewer department showed it was "not used." The records of that department "do not show any entrance by No. 31 anywhere." There was also testimony that in

1908 the owners of the buildings connected with the drain used in common by them were notified to enter the public sewer. With the exception of Mr. Whitcomb they all entered the sewer and ceased to use the drain. No such notice was at any time served on Emma C. Whitcomb.

There was evidence that "in the old part of the city of Boston, around this locality especially, there was hardly an estate that did not connect with the private drain in the rear passage as well as the sewer in the front street." The record does not show when the drain was built. One Braynard, who owned land on Albany Street, (how much does not appear, but it would seem that he was the owner of all the land having the right to discharge into the drain,) in conveying the land No. 7 Albany Street stated in his deed, "Two passageways have been laid out by me which with the drain running under said passageways into the common sewer in Albany Street are to be for the common use and benefit of the owners and occupants of the ten houses aforesaid, each owner respectively paying an equal proportion of the expense of keeping said passageways and drain in repair." "The Emergency Hospital stable which was formerly at No. 7 Albany Street," entered the public sewer in 1889.

The drain carried off the waste water from the defendant's property until January 24, 1914, when it was connected with the street sewer. There was evidence "that the foundation wall at No. 31 had cut the sewer [the common drain in the rear] right in half and they had built the other foundation wall and blocked it; cut it right off." The exact date when this was done did not appear, although there was some evidence that it was a "year or so previous." There was no evidence that the defendant's intestate or predecessors in title had notice or knowledge of the construction of this foundation wall, or of its interference with the drain.

The judge ordered a verdict for the defendant and reported the case.

The defendant, having the right to discharge the waste water from her building into the common drain, did not become liable to the plaintiff unless the plaintiff's property was injured through the defendant's neglect. See *Smith* v. *Lally,* 173 Mass. 365; *Hawkesworth* v. *Thompson,* 98 Mass. 77. It clearly appeared that

the overflow from the drain into the plaintiff's store was caused by the blocking up of the drain on the premises No. 31 Albany Street. This was testified to by the plaintiff's witnesses, and no other cause appeared for the obstruction. Neither the defendant's intestate nor her predecessor in title had anything to do with the building of the wall which caused the clogging of the drain. They had no knowledge that the foundation wall went through it, stopping the outlet to the Kneeland Street sewer, and there is no evidence to show they had any knowledge that the drain was out of repair or defective in any way, until notified of the damage to the plaintiff's stock of shoes.

The mere fact, that the other owners having the right to use the drain ceased to use it when they entered the common sewer, did not deprive them of their ownership in it and did not take from the proprietor of the defendant's estate the right to continue to discharge the waste water into it.

The order of the health department of Boston to enter the public sewer did not require an abandonment of the drain. There was no order demanding this to be done; in fact, the health officer testified "We never prohibited the use of the drain."

No acts were done by Whitcomb inconsistent with the continued existence of the drain and nothing was said or done by him indicating an intent to abandon or extinguish its use as a common drain, and there was no extinguishment or abandonment of the easement. There was no order of the board of health to remove the drain, or prohibiting its use as a nuisance under R. L. c. 75, §§ 66–69. One witness testified that after all the other parties "got out of this common drain," he (Mr. Whitcomb) then claimed he was the only person using the drain, and therefore he had "a good and particular drain;" that "A 'particular drain' is where a building has its own special drain leading into a sewer, one particular drain. 'Common drain' is where different parties enter into a drain, and then connect with the sewer, with the common drain." It did not appear at the time Mr. Whitcomb spoke of the common drain in the rear as being a "good and particular drain" he used the words in the sense in which they were defined by the witness. Even if the owner did so use these words and spoke of the drain as being a particular drain, as understood by the witness, this statement did not make the drain a particular one for his exclusive

use and deprive the others of the use of the easement. It continued to be a common drain under the agreement of the parties, and, although Whitcomb alone used it, he was using it under the right granted him. His trustee by reason of this statement cannot be held to the responsibility resting upon a landowner who, by an artificial structure, causes water or other substances to be discharged on the land of a neighbor, as to which see *Ball* v. *Nye,* 99 Mass. 582; *Shipley* v. *Fifty Associates,* 106 Mass. 194.

Under the conveyance from Braynard the defendant was not bound to make all the repairs in the drain, and, as no negligence on the part of the owner of the property No. 7 Albany Street is shown, the defendant is not liable. Since the plaintiff cannot recover from the defendant, it is unnecessary to consider the effect of the release given by the plaintiff to her landlord. According to the terms of the report judgment is to be entered on the verdict.

*So ordered.*