Andrew Spring & others *vs.* Thomas H. Haskell & others.

Under the U. S. St. of 1851, *c.* 43, the partowners of a ship are jointly liable, to the extent of the value of their interest in the ship and freight pending, for the embezzlement or loss of goods.

The time at which the value of the interest of the owners of a ship is to be taken in computing their liability under the U. S. St. of 1851, *c.* 43, for any embezzlement, loss or destruction by the master or other person of property on board their ship, is just before the tort complained of ; although the ship is subsequently totally lost before reaching her port of final destination.

The liability of the owners of a ship, under the U. S. St. of 1851, *c.* 43, for embezzlement, loss or destruction of property by the acts of the master, is not lessened by the ship being under mortgage.

Action against some of the partowners of the brig Boston, with counts in contract and in tort, to recover the value of a cargo of lumber shipped on board of her and embezzled by the master. The case was decided in June 1860, and is shown in the opinion.

*G. O. Shattuck,* for the plaintiffs.

*C. W. Loring*, for the defendants.

MERRICK, J.   This action is brought to recover of the defendants, as several partowners of the brig Boston, compensation for a cargo of lumber shipped on board of it at Portland, bound thence on a voyage to Buenos Ayres.

It appears from the report of the judge who presided at the trial, that the defendants purchased the brig in August 1856 for $3400; that they paid one half of that sum in money, and gave their notes for the other half, payable in six months, secured by a mortgage on the vessel, which remained in force at the time of its loss ; that the lumber for which compensation is demanded was duly shipped under a bill of lading, and that the vessel proceeded upon the proposed voyage.   The master of the brig, on its passage to its port of destination, put in at Barbadoes, and there unlawfully sold the lumber and appropriated its proceeds to his own use.   He subsequently abandoned the vessel at Grand Cayman, leaving it in the charge of the mate, who set sail intending to go thence to Mobile, but was compelled by stress of weather to put into the port of Galveston.   At that place a new master, not employed by the owners, took possession of the brig, loaded it with a cargo of cotton and hides, and sailed for New York.   On its passage to that port the vessel was wrecked on the coast of Cuba, and there totally lost.

On the trial, the plaintiffs contended that the unlawful sale of the lumber at Barbadoes by the master was made with the privity of the owners or of some one of them, and evidence was produced for the purpose of proving that fact.   But under instructions upon this point, not objected to by either party, a verdict was returned for the defendants.   This question having been thus properly passed upon by the jury, the verdict in relation to it is open to no objection, and must be considered as conclusively establishing the fact that the sale of the lumber by the master was made without the knowledge or consent of either of the defendants.

The defendants asserted at the trial, as one ground of defence, that the vessel was chartered for the voyage, and manned, victualled and navigated by the master; and consequently that

they, as the general owners of it, were not responsible for his misconduct or any of his tortious acts committed during its prosecution. It clearly appears from the report that this question was not considered by the jury, and that no verdict has been rendered in relation to it. It remains therefore to be inquired into and determined hereafter.

The defendants further insist that, even upon the assumption that the vessel was not chartered, this action cannot be maintained against them : first, because they are not jointly liable for any injurious consequences resulting from the alleged barratrous acts of the master, but that the liability of each of them is only several, according to his individual interest in the vessel and freight; and secondly, because, whatever their liability originally was, they were wholly absolved and discharged from it by the total loss and destruction of the vessel on the coast of Cuba. These, they contend, are rights secured to them under and by force of the provisions of the act of congress entitled " an act to limit the liability of shipowners, and for other purposes." U. S. *St.* 1851, *c.* 43, 9 Sts. at Large, 635.

By the common law, which prevailed in this country previously to the enactment of any statute upon the subject, owners of ships were responsible to other persons for injuries to their property resulting from the tortious acts of the master or mariners, to the full extent of the damage thereby occasioned. This liability is founded upon the principles of the law of agency. The rule which makes the principal responsible for the wrongful acts of the agent includes the master and crew of a vessel sailing under the authority and direction of the owner; and the relation of master and servant is sufficient to determine when it exists, and to measure its extent. Maude & Pollock on Shipping, 30, 75, 304. 3 Kent Com. (6th ed.) 217. 1 Parsons Marit. Law, 391. *Stinson* v. *Wyman,* Daveis, 175. When the liability is once established, each owner is liable *in solido* for the whole amount of the debt or damage to be paid, without reference to the proportion of his interest, or to any stipulation between himself and the other owners. The persons engaged in the navigation of the vessel are the agents and servants of all the owners,

who are therefore all jointly liable for the acts of those whom they thus employ. Maude & Pollock on Shipping, 39. 1 Parsons Marit. Law, 94, 391.

The act of congress provides that in all the various instances enumerated in it, "the liability of the owner or owners of any ship or vessel" shall in no case exceed the amount or value of the interest of such owner or owners respectively in the ship or vessel, and her freight then pending. § 3. It is very apparent from all its provisions that in the enactment of the statute the rules and principles of the common law, by which the owner and partowners jointly are held responsible for the damage caused by the tortious act of the master and crew to its utmost extent, were clearly understood and recognized by the legislature. A liability so indefinite and extreme, and which might prove to be so ruinous in its consequences, was undoubtedly regarded either as unjust in itself, or, upon grounds of public policy in relation to the unfavorable influence it would be likely to exert upon trade and navigation, so unreasonable, that it ought to be reduced, modified and accurately defined. And this appears to be the sole change intended to be made in the existing law.

The statute does not, in the terms in which it is expressed, propose to alter or vary the rights or relations of shipowners as between themselves, nor as between them and any other person who shall have suffered damage in consequence of the unjustifiable acts of their servants or agents, except in reference to the amount of compensation which may be recovered of him. To the accomplishment of this object its provisions are direct and explicit. The liability is not to exceed the value of the owner's interest in the ship and pending freight. Accordingly, in fixing a limit to the liability of the "owner or owners," it substantially provides that if there be but one owner, it is the value of his interest; but if there be several owners, it is the value of their interest, which is to be the measure of compensation to be recovered for the damage occasioned by the negligence or tortious misconduct of those whom they have employed or authorized to act on their account and in their service.

That the statute was not intended to deprive those, who should suffer loss or injury, of the right to avail themselves of the joint responsibility of the several partowners, is apparent not only from the absence of any apt words to that effect, but seems to result as a direct, if not necessary, implication from the provision in another part of it, that if the whole value of the ship and its freight for the voyage shall be insufficient to make full compensation to all the several persons whose property has been embezzled, lost or destroyed, they are to receive payment in proportion to their respective losses.   And for this purpose they, or any of them, or any other several owners of the ship, " may take appropriate proceedings in any court for the purpose of apportioning the sum, for which the owner or owners of the ship or vessel may be liable, among the parties entitled thereto."   § 4.

. Now it will be observed that this apportionment is not to be made among the partowners of the ship as to the amount which they are severally bound and required to pay, but only among the claimants for compensation, in order that it may be shown what each of them is individually entitled to recover against either the owner or the owners of the ship ; and whatever sum the apportionment thus made shall show that they are severally en titled to have, they may recover against all who are liable for it; thus plainly indicating that if there be several partowners of the ship, they are to remain under the same joint responsibility to which they were before subjected by the common law.

The defendants being found to be thus jointly liable, the question arises, at what time the value of their interest in the ship and freight is to be estimated.   We think there can be no doubt that the proper answer to this inquiry is, that the value of the ship and freight is to be taken upon an estimation to be made of the condition of each at the time when the lumber was unlawfully disposed of by the master at Barbadoes.   This is apparent from several considerations.   The statute provides for a substantial, though a limited, remedy in behalf of freighters and other persons, to whom property duly shipped belongs, against the owner or owners of the ship ; and in declaring that it shall

extend in amount, not only to the value of his interest in the ship, but also to that of the "pending freight," the time when the estimation of the value is to be made seems to be clearly indicated. It is the "pending freight" which is to be estimated; not that which may be earned upon the completion of the voyage, but that which remains undecided when the circumstance or incident occurs which gives to the injured party a cause of action. This therefore would seem to designate the time with precision and exactness.

That this must be the time results also from consideration of the rights of the parties. As soon as a trespass is committed, an action may be commenced for the recovery of compensation for the damage caused by it. Although in the case of collision of vessels at sea, the resort of the injured party to legal redress is commonly postponed, in consequence of a want of knowledge of the fact, until the arrival of the offending ship, yet it is not necessarily so. As soon as he becomes advised of the occurrence and of the injury resulting from it, he may avail himself of the remedy afforded him by law, and institute legal proceedings without delay. If there be an unlawful conversion of personal property, an action may be immediately instituted, and this without any demand upon the wrongdoer. These rights rest on familiar principles. It follows as a necessary consequence that if a right of action has already accrued, and nothing remains in determining the rights of the parties but to ascertain, in an action therefor immediately commenced, the amount of damages to be recovered, and the law has restricted this to a certain defined extent, it must necessarily be determined by considering the condition of things as they existed at that particular time. No other moment could with equal propriety and justice be resorted to for that purpose. As soon as the injury is inflicted, the injured party becomes at once entitled to redress; and the limitation of the amount of damages which the law allows him to recover should be sought for in the then actual value and condition of the ship and pending freight.

This conclusion is in conformity with the rule which, under statutes containing similar provisions, has long prevailed, and

been established by repeated decisions in England. " With re-spect to the ship, it is admitted," said Gifford, C. J., " that since the case of *Wilson* v. *Dickson* the value of that must be taken at the time of the loss." And it was held, that that was also the time for estimating the value of the prospective freight. *Cannan* v. *Meaburn,* 1 Bing. 465. *Wilson* v. *Dickson,* 2 B. & Ald. 2. The same rule has been repeatedly recognized as cor-rect, and has been constantly adhered to. Those cases are in relation to the loss of goods. The same rule has been applied to injuries by collision. *The Mary Caroline,* 3 W. Rob. 101, and 6 Notes of Cases, 536. *Brown* v. *Wilkinson,* 15 M. & W. 391. In the last named case, Parke, B., suggested that it might have been more correct originally to have determined that the estimate of the value of the ship should be made at the time of the commencement of the voyage. But he acquiesced in the course of decisions which had previously prevailed, and, not-withstanding the doubt rather intimated than asserted by him, we think the decision stands upon sound principles, and was fairly warranted by a true interpretation of the statutes upon which it was made. 1 Parsons Marit. Law, 396.

Nor is this rule in relation to the mode of ascertaining the amount of damages to be recovered against the owners of a ship in a personal action against them on account of the spoliation, loss or destruction of goods or property lawfully shipped or put on board by the master, crew or passengers, affected or varied by the provision of § 4, that " it shall be deemed a sufficient compliance with the requirements of this act on the part of the owner or owners if they shall transfer his or their interest in such vessel and freight, for the benefit of the claimants, to a trustee to be appointed by any court of competent jurisdiction, to act as such trustee for the person or persons who may prove to be legally entitled thereto, from and after which transfer all claims against the owner or owners shall cease." This provis-ion, like the other parts of the statute, is predicated upon the assumption of the personal liability of the owners, and is in-tended for their relief. It is left optional with them, when a suit is prosecuted against them individually, to determine whether

they will avail themselves of it. It is not compulsory upon them ; but they may choose for themselves between abiding the event of the suit and the alternative of transferring their interest in the ship and freight. If they decline to make the transfer, the damages must be assessed to the full amount of the injury sustained, not exceeding however, in any event, the value of the ship and pending freight. And upon this question it can make no difference whether they will not, or cannot, for any reason, make the transfer requisite to their release and discharge from all further proceedings. The release is upon an express condition, and it cannot be obtained unless this condition is complied with. If the vessel has ceased to exist, neither the vessel nor the interest of the former owners of it can be the subject of transfer and assignment; and therefore the privilege cannot be availed of, and nothing remains to be done but to ascertain and assess, according to the prescribed rule, the damages which they are under a legal liability to pay.

This conclusion is certainly in conflict with the opinion expressed in the case of *Wattson* v. *Marks*, 2 Amer. Law Reg. 157, cited and relied upon by the defendants. But for the reasons stated in the case of *Walker* v. *Boston Ins. Co.*, *ante*, 303, we think that decision cannot be sustained. In the same case, it is said by Kane, J., in commenting upon the particular circumstances in the case of *Wilson* v. *Dickson*, that after the right of action has once attached, it cannot be varied by subsequent circumstances. To this statement of the law, applied, as it is by the learned judge, to the amount to be recovered in actions *in personam*, we perceive no objection; and if the right is not varied by subsequent circumstances, the amount of damages to be recovered is fixed and unchangeable, and is to be sought in the then existing circumstances. The strict application of tha principle to an action against the owner of a ship, to recover compensation for the loss, embezzlement or destruction of the goods, merchandise and property of freighters and other persons, necessarily leads, under the provisions of the statute, to a valuation of the ship and pending freight in the condition in which they existed at the moment of the tortious act or unlaw-

Spring & others *v.* Haskell & others.

ful conversion.    Applying it to the present case, it must be held, that the time of the sale and actual conversion of the lumber to his own use by the master at Barbadoes, is to be taken as the period when the value of the vessel and pending freight is to be made, to ascertain the limitation to the benefit of which the defendants are entitled, and by which all parties are concluded.

In the assessment of damages to be recovered by the plaintiffs, no deduction is to be made from the value of the ship on account of the subsisting incumbrance upon it, created by the mortgage executed by them.    Their interest in it is just the same whether the mortgage is enforced, or discharged on payment by them of the debt for which it stands as security.    In either contingency the ship is availed of by them to their own use, and they enjoy the full benefits of their ownership of it.    If the mortgage is enforced and the right of redemption extinguished by foreclosure of the right of redemption, it operates to its full value towards the payment of their debt; otherwise, they pay the debt, and the vessel is restored to them, relieved from any incumbrance upon it.    Their interest in it, either way, is the same ; and therefore its whole value is to be estimated in finding the measure or limit of their liability in that action. This conclusion is manifestly within the intent and meaning of the legislature as expressed in the statute.    If shipowners could limit their liability to the mere surplus value above a subsisting mortgage, an easy way would be found to relieve themselves altogether from responsibility on account of the tortious acts or other misbehavior of agents in their employment.

This case must therefore be sent to a jury to determine whether the vessel was chartered to the master, and was manned, victualled and navigated by him on the voyage ; and if it was not, then to find and assess the damages for the plaintiffs.    A new trial is accordingly ordered ; but the trial is to be confined to these two questions.