THE CLARK-AIKEN COMPANY *vs.* CROMWELL-WRIGHT COMPANY, INC.

Berkshire.    October 9, 1974. — March 3, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Negligence,* Of owner of dam. *Dangerous Use of Property. Real Property,* Dangerous use. *Water. Practice, Civil,* Demurrer.

Discussion of the origin and development of the doctrine of strict liability. [72-90]

Where a declaration in tort alleged that the failure of the defendant's dam caused the plaintiff's land to flood and sought recovery for damages, not for negligence, but on the theory of strict liability, a demurrer should not have been sustained as strict liability

is available as a basis of liability where the declaration could properly be viewed as portraying the plaintiff's undertakings as unusual or of such a dangerous nature that they must be performed at the sole risk of the perpetrator. [91]

TORT. Writ in the Superior Court dated March 29, 1968.

The action was heard by *Quirico,* J., on demurrer and was reserved and reported by *Tisdale,* J., to the Appeals Court. The Supreme Judicial Court ordered direct review.

*Frederick M. Myers* for the plaintiff.

*John D. Lanoue* for the defendant.

TAURO, C.J. This case is before us pursuant to G. L. c. 231, § 111, on a report by a judge of the Superior Court. The question submitted on report is as follows: "Does Count II of the plaintiff's declaration set forth a cause of action known to the law of the Commonwealth of Massachusetts?"

The plaintiff brought an action in tort in two counts; the first alleging negligence, the second in strict liability.[1] It seeks to recover for damage caused when water allegedly stored behind a dam on the defendant's property was released and flowed onto its property. A Superior Court judge sustained the defendant's demurrer on

---

[1] That portion of the language of count 2 as stated in the Superior Court decision is as follows: "[T]hat the Defendant . . . had built, constructed, maintained, repaired, and operated a dam, and impounded waters behind said dam on property owned by the said defendant . . .; that the said dam was so built, constructed, maintained, repaired, and operated for the defendant's own purposes and benefits; that the *waters held back by the said dam were dangerous and created a risk of harm to the land and property of the plaintiff as aforesaid* and of all other persons owning land or property downstream from the said dam; *that the said dam and its continuance created a risk of harm to the plaintiff and others similarly situated*; and that the said dam by its failure released the waters held back by it, which waters caused a flood which overran the plaintiff's land, its buildings and structures and the personal property aforesaid, destroying and damaging the same and so interrupting the business of the plaintiff that it was forced to suspend operations" (emphasis added).

the ground that "Count II . . . does not allege a cause of action under the law of this Commonwealth." He held that, "in order to recover for damage caused by the water which escaped from the dam owned by the Defendants, the Plaintiffs must allege and prove that the escape was caused by intentional or negligent fault of some person or entity."[2]   The sole issue before us is

[2] In a lengthy decision (December 9, 1968) sustaining the demurrer as to count 2, the judge below did not espouse a change in the existing law but said, in essence, that strict liability (apart from negligence) as expounded in *Rylands* v. *Fletcher*, [1868] L. R. 3 H. L. 330, is not and never has been the law of this Commonwealth. Indeed, the judge seems to question whether *Rylands* v. *Fletcher* itself was based on strict liability. This view was expressed in the face of explicit language to the contrary in several of our prior cases, the most recent being *Golden* v. *Amory*, 329 Mass. 484 (1952). Moreover, the judge in his decision noted (but apparently in disagreement) that the "distinguished scholar" Dean Prosser, in his prestigious work, The Law of Torts, § 77, pp. 523, 524 (3d ed. 1964), states that "[i]n the United States *Rylands* v. *Fletcher* was promptly accepted by the courts of Massachusetts and Minnesota," citing *Ball* v. *Nye*, 99 Mass. 582 (1868), and that Massachusetts is one of the twenty States in which "it has been approved by name, or a statement of principle clearly derived from it has been accepted," citing *Wilson* v. *New Bedford*, 108 Mass. 261 (1871), and *Gorham* v. *Gross*, 125 Mass. 232 (1878).

Of necessity, the nature and extent of the decision of the judge below is deserving of the detailed treatment and critique given to it in our opinion. Suffice it to say at this point, for the purpose of this footnote, that it appears that the judge failed to recognize that *Rylands* v. *Fletcher* and its progeny deal primarily with the question of proof. Given the fact pattern as delineated in the *Rylands* case, it was intended that the plaintiff should *not have* to prove negligence or wilful conduct on the part of the defendant. The basis for the judge's analysis of the reported cases, including the *Rylands* case, is that (as he claims) they had elements of negligence on the part of the defendant or an independent contractor. Assuming this to be true (although in some of the cases he discusses this is far from clear) the fact still remains that the plaintiff, under *Rylands* v. *Fletcher* and the cases which followed, is not *required* to undertake the often impossible task of proving negligence. Merely because in some cases the plaintiff has undertaken to do the unnecessary (attempt to prove negligence) does not in any way diminish the validity and authority of the *Rylands* case and its progeny which establish the rule of liability without regard to fault, and in doing so relieve the plaintiff of any obligation either to allege or prove negligence.

whether a cause of action in strict liability exists in this Commonwealth regardless of considerations of fault on the part of the defendant. After careful consideration, we conclude that strict liability as enunciated in the case of *Rylands* v. *Fletcher*, [1868] L. R. 3 H. L. 330, is, and has been, the law of the Commonwealth.

In light of the long and detailed opinion by the Superior Court judge, with its exhaustive analysis of the pertinent cases, and because of the extensive briefing by counsel in the instant case, we believe it appropriate, and indeed necessary, to analyze closely the history and development of the strict liability rule, beginning with *Rylands* v. *Fletcher, supra.*

The doctrine known as strict liability, or absolute liability without fault, was first enunciated in the English case of *Rylands* v. *Fletcher, supra.* In that case, the defendants had a reservoir built on land located above a number of vacant mine shafts. When the reservoir was partially filled it burst through one of the underlying shafts, causing water to flow into the plaintiff's coal workings. The actual construction of the reservoir was undertaken by contractors of the defendants, who were found to have been negligent. The defendants themselves were unaware of the shafts, and were found not to have been negligent. The trial court found for the defendants. *Fletcher* v. *Rylands*, [1865] 3 H. & C. 774, 799.

On appeal, this decision was reversed in *Fletcher* v. *Rylands*, [1866] L. R. 1 Ex. 265. The lower appellate court considered two possible courses in the case: it could be decided on the basis of negligence, in which case the court would be required to face the issue of whether a defendant would be liable for the acts of its contractors,[3]

---

[3] At that time, such liability did not exist in England. In fact, liability for the acts of contractors was not established until ten years later in *Bower* v. *Peate*, [1876] 1 Q. B. D. 321. See Prosser, Torts, § 78, p. 505, fn. 45 (4th ed. 1971).

or it could be viewed as a strict liability case, thereby obviating the need for making such a determination.

The court concluded, "[T]he true rule of law is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape." [1866] L. R. 1 Ex. at 279. After reaching this conclusion, Mr. Justice Blackburn stated, "The view which we take of the first point *renders it unnecessary to consider* whether the defendants would or would not be responsible for the want of care and skill in the persons employed by them" (emphasis added). *Id.* at 287. It is clear that negligence was not a factor in the appellate court's decision of the case. Were it otherwise, the court would have been required to reach an issue on which it specifically reserved decision. In imposing strict liability, it also ruled that where only the contractors were found to have been negligent, and considering the then state of English law, negligence could not be imputed to the defendants. Thus, negligence was clearly irrelevant to the decision in that case.

On appeal to the House of Lords, Mr. Justice Blackburn's decision was upheld, although the doctrine of strict liability was narrowed somewhat. Speaking for the House, Lord Cairns stated: "[I]f the Defendants . . . had desired to use . . . [their land] for any purpose which I may term a non-natural use . . . and if in consequence of their doing so, *or* in consequence of any imperfection in the mode of their doing so, the water came to escape . . . that which the Defendants were doing they were doing at their own peril; and, if in the course of their doing it, the evil arose . . . [escape and resulting injury] then for the consequence of that, in my opinion, the Defendants would be liable" (emphasis added). *Rylands* v. *Fletcher,* [1868] L. R. 3 H. L. at 339. Although Lord Cairns limited the doctrine to include liability only for "non-

natural" uses of one's land, he indicated that he "entirely concur[red]" with Mr. Justice Blackburn's analysis. *Id.* at 340. Further, in using the disjunctive "or" in the quotation above, he made clear that conduct of the activity itself is sufficient for imposition of liability, and that imperfection in the mode of doing so, or negligence, is merely an alternative basis therefor.[4]

There is, then, nothing in either opinion in the *Rylands* case which would support the defendant's contention that the case is founded on negligence. Furthermore, the English courts have never regarded it as anything but one of strict liability. See, e.g., *Smith* v. *Fletcher,* [1874] L. R. 9 Ex. 64, 67; *Rainham Chem. Works, Ltd.* v. *Belvedere Fish Guano Co. Ltd.* [1921] 2 A. C. 465, 471; *Western Engraving Co.* v. *Film Labs. Ltd.* [1936] 1 All E. R. 106.[5] Finally, there is no basis to conclude that this court has adopted anything but the broad strict liability rule of the case, and Massachusetts case law follows and supports this view.

In the instant case the defendant contends (and the Superior Court judge agreed) that none of the Massachusetts cases which purportedly apply the rule of strict liability are in fact premised on that doctrine. Furthermore, the defendant disputes the authority of those cases which seemingly approve the doctrine, recognizing it as the law of the Commonwealth, and argues that the citing of the *Rylands* case as authority in them is either in an

---

[4] This may be the basic reason why plaintiffs often plead their cases on two counts: (1) absolute liability, and (2) negligence.

[5] The argument made by the defendant herein, that *Rylands* v. *Fletcher* is really founded on negligence, was advanced by the Circuit Court of Tennessee some eighty-five years ago in *Cumberland Tel & Tel Co.* v. *United Elec. Ry.* 42 Fed. 273, 279-280 (M. D. Tenn. 1890). However, it was subsequently rejected by the English courts, which saw the "American" view as only partial acceptance of the English doctrine. *National Tel. Co.* v. *Baker,* [1893] 2 Ch. 186, 200.

improper context or unnecessary to the decision. We cannot agree with this analysis. We think that logic and reason permit these cases to be read consistently with the existence of strict liability as a rule of law in this Commonwealth. We proceed to an examination of these cases to illustrate the point.

The case often cited for adopting the rule of the *Rylands* case in Massachusetts is *Ball* v. *Nye,* 99 Mass. 582 (1868). There, the plaintiff sued for damages resulting from the discharge of filthy matter which percolated from the defendant's vault into the plaintiff's cellar and well. The defendant requested the trial judge to instruct the jury that the plaintiff could not recover absent negligence or intentional conduct on the part of the defendant. The judge refused, and instead directed a verdict for the plaintiff. In instructing the jury, he stated "that the defendant was bound to so construct his vault that the contents thereof should not percolate through into the plaintiff's cellar and well, and, it being conceded that percolations did pass through, to the plaintiff's injury, such percolations were evidence of negligence, upon which the plaintiff was entitled to a verdict." *Id.* at 583-584.

The judge below, in analyzing the opinion in the *Ball* case, concludes that, because the court discussed "negligence" and "due care," *Rylands* v. *Fletcher,* although cited, was not applied. He reads the case instead as one of either trespass or negligent wrongdoing. However, this reading ignores the fact that the defendant there requested charges to the jury on these grounds, and they were denied. Further, the trial judge's statement that the precolations themselves were evidence of negligence can be seen as another way of expressing the application of strict liability. In fact, it is clear from his directing a verdict for the plaintiff that the judge considered the circumstances to have established negligence as matter of law. It could be argued that this is akin to strict lia-

bility.[6]   Thus, the *Ball* case, although pleaded as a case of negligence or intentional tort, does in fact adopt the

[6] Negligence can be viewed as a continuum where the various gradations depend on questions of proof.   If we view it as such, a starting point would be the ordinary negligence case where the standard of care is due care, and where the plaintiff has both the burden of production and the burden of persuasion on this issue.

Further along would be the use of circumstantial evidence to establish the plaintiff's prima facie case.   *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177 (1959).   In such a case, the theory that things do not ordinarily happen in the way in which they did absent negligence substitutes for direct evidence.   If the instrumentality causing injury was in the control of the defendant, the plaintiff gets to the jury without proof of specific acts of negligence. This in essence reverses the burden of production, but leaves the burden of persuasion intact, with the plaintiff.   See, e.g., *Ware* v. *Gay,* 11 Pick 106 (1831); *Smith* v. *Boston Gas Light Co.* 129 Mass. 318 (1880); *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196 (1902); *Gelinas* v. *New England Power Co.* 359 Mass. 119 (1971).   One step further along are cases applying the doctrine above but involving higher standards of care because of the nature of the activity involved.   See *Zezuski* v. *Jenny Mfg. Co.* 363 Mass. 324 (1973).   See also *Gelinas* v. *New England Power Co., supra.*

As we progress further along on our continuum, we reach cases such as *Knowles* v. *Gilchrist Co.* 362 Mass. 642 (1972), where both the burden of production and the burden of persuasion shift to the defendant.   The defendant, who is in exclusive control of the instrumentality causing injury, is given the entire burden of proving that he has exercised that degree of care required in the circumstances, and thus that he has not been negligent.

Finally, somewhat further along, at the end of the continuum, we find true strict liability cases; those in which the carrying on of the activity, if it causes injury, is itself deemed negligent, despite the social utility thereof or the fact that extreme care was taken.   In these cases, once a plaintiff gets over the threshold burden of showing that the facts bring the case within the parameters of the strict liability doctrine, the burden shifts to the defendant.   However, in these cases, the nature of the activity raises the burden to a point where there is no evidence the defendant can introduce to show he was not negligent.   Carrying on the activity itself, where injury results, is negligence per se, and nothing the defendant can prove will absolve him unless he can show he comes within one of the exceptions to the rule.   In this sense, strict liability is absolute liability for negligence, even though the best precautions are taken.   See, e.g., *Ball* v. *Nye,* 99 Mass. 582 (1868), and *Ainsworth* v. *Lakin,* 180 Mass. 397 (1902), where the court imposed *strict* liability after finding that the conduct of the activity *itself,* where it caused injury, was negligence per se.

*Rylands* case and the rule of strict liability as the law of the Commonwealth.

The next case citing the *Rylands* case is *Shipley* v. *Fifty Associates,* 106 Mass. 194 (1870), where snow and ice that had accumulated on the defendant's roof fell on the plaintiff, causing injuries. The court held that the defendant had no right to construct his building so as to allow snow and ice to fall from it onto the street and injure people walking thereon, and "no other proof of negligence on his part is needed." *Id.* at 199. Thus, the court held that the construction and maintenance of the roof itself was negligent, and held the defendant liable. This language accords with the "continuum theory" of negligence (*supra,* at fn. 6), and is not at all inconsistent with adoption of that rule. The defendant disagrees, and cites *Delano* v. *Mother's Super Mkt. Inc.* 340 Mass. 293 (1960), as indicating that the *Shipley* case is not a strict liability case. The *Delano* case itself is not, and should not be, a strict liability case,[7] and Justice Whittemore's comment in dissent that "probably, on correct analysis, none of our roof cases shows liability without fault," *id.* at 300, may be correct if a very strict reading of the *Shipley* case is taken.[8] The precise question

---

[7] The imposition of strict liability as set out in the *Rylands* case requires the escape of a dangerous instrumentality from land of the defendant onto land of another, causing injury or damage. The *Shipley* case comes within this requirement, as there the ice and snow escaped from the defendant's roof and fell onto the plaintiff, who was on a public way. In the *Delano* case, the plaintiff fell *on the defendant's property* because ice had developed when water fell from the defendant's roof and froze. There was no escape onto property of another which would bring that case within the *Rylands* doctrine. Finally, neither party in the *Delano* case cited or indicated reliance on the *Rylands* case, obviously recognizing its inapplicability to the facts therein.

[8] The footnote to Justice Whittemore's statement begins, "The only basis for the principle [liability without proof of negligence] would appear to be extrahazardous conduct, and we have carefully restricted this doctrine to exclude such cases as these [roof cases]." This is further recognition of the rule as we have stated it.

whether the rule in its narrow form was applied in the *Shipley* case is really not important to the inquiry here, however, because, either way, the *Shipley* case *expressly* recognizes the existence of the doctrine of strict liability as enunciated in the *Rylands* case.

*Wilson* v. *New Bedford,* 108 Mass. 261 (1871), an action for damages resulting from water percolating onto the plaintiff's land as a result of a dam built on the defendant's property, is the next case to discuss the *Rylands* case.  In the *Wilson* case, St. 1863, c. 163, § 6, authorized recovery for damage ensuing from dams built by the city.  The central issue was whether percolation damage was covered by the statute.  This court found that it was, and in doing so cited the *Rylands* case with approval.

The judge below dismissed the *Wilson* case as support for the strict liability rule of the *Rylands* case on the grounds that first, it is basically a statutory case, and second, it is more likely a case of trespass.  However, in *Fuller* v. *Chicopee Mfg. Co.* 16 Gray 43, 45 (1860), this court made clear that the "Mill Acts," under which the action was brought in the *Wilson* case, were not intended to confer any new rights, nor did they create additional claims which did not exist at common law.  Thus, it was necessary to look to the common law to determine whether the plaintiff had a valid cause of action, and in doing so, the court looked in part to the *Rylands* case. Thus, although the *Wilson* case was brought under the statute, its approving discussion of the *Rylands* case and the doctrine of strict liability was not mere surplusage, but is instead further proof of its acceptance as the law of Massachusetts.  Furthermore, nowhere in the opinion is the word "trespass" mentioned or advanced as a theory for recovery.  Thus, reliance on that theory as the basis for the *Wilson* decision in the present case seems misplaced.[9]

---

[9] Use of *United Elec. Light Co.* v. *Deliso Constr. Co. Inc.* 315

A short time after the *Wilson* case, this court again had occasion to discuss the doctrine of *Rylands* v. *Fletcher, supra,* in *Gorham* v. *Gross,* 125 Mass. 232 (1878), where a party wall built by the defendant's contractors fell, causing damage to the plaintiff's property. The *Gorham* case is clearly a negligence case; the jury found that the defendant's contractors were negligent in building the wall in subfreezing temperatures without sufficient braces or stays. In ruling on the defendant's exceptions, this court reviewed the instruction given to the jury and determined that it was "sufficiently favorable to the defendants." *Id.* at 238.

The court then examined the rule of the *Rylands* case and stated, "The present case does not require us to decide whether it is more accurate to say that it is not a question of negligence and that the defendant is liable even in case of latent defect; or to say that the fall of the wall, in the absence of proof of inevitable accident or of the wrongful act of third persons, is sufficient evidence of negligence.[10] . . . In the case at bar, the jury, under the instructions given, must have found negligence." *Id.* at 239-240 (footnote added). Although some of the references to the *Rylands* case are somewhat confusing, there

---

Mass. 313 (1943), by the judge below to support his view of the *Wilson* case is inapposite. Actually it supports the view that right to suit on (1) strict liability, (2) negligence, (3) nuisance, and (4) trespass coexists, depending on the facts of the case. Although the *United Elec. Light Co.* case was sent back to the Superior Court for trial on the trespass and nuisance counts, there, both of these theories were pleaded and relied on. Furthermore, this court (Ronan, J.) considered the applicability of the *Rylands* doctrine and strict liability, but concluded that, although that doctrine was the law of the Commonwealth, it was not applicable because the activity involved, tunnelling in a public way for the construction of a sewer, was not extraordinary nor ultrahazardous.

[10] This statement in the *Gorham* case indicates tacit recognition of the "negligence continuum" theory of strict liability, although the court found it unnecessary to decide whether that theory would have been applicable to the case had there not been a finding of negligence at the trial.

is little in this case to support the defendant's contention that strict liability is not recognized as a rule of law in the Commonwealth. Furthermore, since negligence is clearly the basis for decision in the *Gorham* case, any possible contradictory implications regarding the *Rylands* case are dictum and are not controlling in any event.

The doctrine of strict liability was next discussed in *Mears* v. *Dole*, 135 Mass. 508 (1883), where the plaintiff and the defendant were adjoining landowners of parcels situated on the ocean. The defendant excavated his land down to the low water mark, causing the plaintiff's land to be undermined. The plaintiff sought injunctive relief and damages. The plaintiff's contention was sustained by this court citing the *Rylands* and *Wilson* cases. There was no indication of negligence in the case, and accordingly it was not discussed. The defendant herein argues that the *Mears* case is one of intentional tort, and that the strict liability rule of the *Rylands* case is not applicable. There is no indication that the court dealt with the *Mears* case on the basis of the defendant's having committed an intentional act, but in any event, the doctrine of *Rylands* v. *Fletcher* once again was set out and cited with approval.

Discussion of the *Rylands* case next appears in another case arising out of the fall of a wall. This time, however, the court allowed the plaintiff to recover by applying the doctrine of strict liability. In *Ainsworth* v. *Lakin*, 180 Mass. 397 (1902), the defendant's structure was destroyed by fire, but the defendant allowed the useless walls to remain standing. One wall fell and damaged the plaintiff's property. The court, in upholding a verdict for the plaintiff, discussed the rule of strict liability as enunciated in the *Rylands* case. It then examined the duty of a landowner with regard to ordinary structures built on his property and concluded that, in this connection, this duty does not go beyond refraining from negligence in construction and maintenance. Finally, it determined that, in light of its use-

lessness and the danger it created, the defendant's wall was the type of instrumentality covered by the *Rylands* doctrine and was not an ordinary wall, maintenance of which would be governed by traditional negligence standards. Accordingly, it imposed liability.[11] The *Ainsworth* case is thus authority for the imposition of strict liability, regardless of negligence, where an "unusual" or "extraordinary" instrumentality causes injury.[12]

The judge below in his decision rejected the contention that *Ainsworth* v. *Lakin, supra,* is a strict liability case. In doing so, he quoted language from that decision describing the wall in question[13] and concluded that it "sounds to this Court like a statement of the law of liability for negligence, considering all of the circumstances, one of which was the condition of the wall, and the likelihood that it might fall and thereby cause damage." We believe, however, that the purpose of the language quoted was to distinguish the structure in question from ordinary walls in order to justify the imposition of strict liability, and was not to support imposition of liability based on negligence.

---

[11] The court made clear that the rule applied in the *Ainsworth* case was not to be extended to "the construction and maintenance of walls of *ordinary* buildings" (emphasis added). *Id.* at 401. It was the particular facts which made the wall come within the strict liability doctrine. This approach accords with the modern application of the doctrine, wherein the facts and circumstances of the particular case must be considered. See Restatement.2d: Torts (Tent. Draft No. 10, April 20, 1964), § 520.

[12] Reading the *Ainsworth* case in this manner is further supported by the following language therein: "It was the duty of the defendant not to suffer such a wall to remain on his land where its fall would injure his neighbor, without using such care in the maintenance of it as would *absolutely* prevent injuries" (emphasis added). *Id.* at 401-402. This is clearly the language of strict liability.

[13] The language quoted is as follows: "His [the defendant's] experts testified that before any part of the wall could safely be built upon, the third story at least would have to be taken down. This upper part of the wall was that which was most in danger of falling,

Finally, even if the language quoted could be read as indicating negligence, that does not affect our construing the case as one of strict liability. The fact that a case of strict liability also contains elements of negligence does not preclude the plaintiff from recovering on the basis of strict liability.[14] The distinction is basically one of proof in the particular circumstances. The plaintiff must decide whether it is more economic and feasible to establish negligence under appropriate pleadings, or to prove that the activity in question comes within the parameters of strict liability. The fact that a plaintiff chooses to go forward on one, or possibly both, of these theories does

---

and the part whose fall would be most likely to do damage. To maintain it, or to leave it standing to its full height could serve no useful purpose. Its condition in reference to fitness for use was an undisputed fact on the evidence. Instead of being a part of a building adapted to occupation it was a part of the ruins of a building. To maintain such a wall after the expiration of a reasonable time for investigation and for its removal, would not be a reasonable and proper use of one's property. It was the duty of the defendant not to suffer such a wall to remain on his land where its fall would injure his neighbor, without using such care in the maintenance of it as would absolutely prevent injuries, except from causes over which he would have no control, such as *vis major*, acts of public enemies, or wrongful acts of third persons which human foresight could not reasonably be expected to anticipate and prevent. This was the rule of law stated by the judge to the jury."

[14] Conceivably a clear case of strict liability could also involve evidence of negligence. The *Ainsworth* case is one example. Another example would be a blasting case where the plaintiff suffered both direct and indirect damage. Strict liability would be imposed for direct damage done by reason of falling rock whereas negligence would have to be proved to recover for damage caused indirectly by concussion. Assuming the presence of negligence in discharging the blast, it would be extraordinary if the plaintiff would then lose his right to recover on the basis of strict liability and would have to prove negligence for the *direct* damage inflicted. Still another example would exist in this case if a structural weakness in the dam had been apparent for a period of time. The plaintiff could proceed on the basis of negligence, or strict liability, or both. But the mere existence of structural defects would not *impose* on the plaintiff the obligation of proving negligence.

not undercut the existence or vitality of either. The judge apparently ignored or overlooked this important point in his basic reasoning.

*Rylands* v. *Fletcher, supra,* has been cited with approval by this court on many subsequent occasions, but liability has not been imposed in reliance thereon for a variety of reasons. These include findings that the activity in question was neither ultrahazardous nor extraordinary, *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161, 168, 169 (1932) (where the court said, "The plaintiffs rightly rest their cases on the rule of *Rylands* v. *Fletcher,*" but went on to demonstrate that the facts established at the trial did not come under that doctrine); *Garrett* v. *M. McDonough Co.* 297 Mass. 58, 61 (1937) (the bursting of an oil hose "is not within the doctrine of *Rylands* v. *Fletcher* . . ., *Ainsworth* v. *Lakin* . . . [citations omitted] and *Bratton* v. *Rudnick,* 283 Mass. 556 [1933]"); *Brian* v. *B. Sopkin & Sons, Inc.* 314 Mass. 180, 182 (1943) ("The principle of *Rylands* v. *Fletcher* . . . does not impose liability for ordinary uses of property like the one presented in this case, which involved no great threat to neighbors."); *United Elec. Light Co.* v. *Deliso Constr. Co. Inc.* 315 Mass. 313, 321-322 (1943) ("The application of the doctrine [strict liability] . . . has been limited in this Commonwealth 'to such unusual and extraordinary uses of property in reference to the benefits to be derived from the use and the dangers or losses to which others are exposed, as should not be permitted except at the sole risk of the user.' . . . Tunnelling in a public way for the construction of a sewer or other structure is not an unusual undertaking or one of such an extremely dangerous nature that it must be performed at the sole risk of the one therein engaged."); *Fibre Leather Mfg. Corp.* v. *Ramsay Mills, Inc.* 329 Mass. 575, 577 (1952) ("[T]he rule of *Rylands* v. *Fletcher* 'applies to unusual and extraordinary uses [of land] which are so fraught with peril to others that the owner should not be permitted to adopt them for his own purposes without

absolutely protecting his neighbors from injury or loss by reason of the use.' Where, however, the injury complained of is caused by a use that is 'ordinary and usual and in a sense natural, as incident to the ownership of the land,' liability is imposed only for negligence. . . . The installation and use of the tank in the circumstances disclosed here were not extraordinary or unusual and involved no great threat of harm to others."), and findings that one of the exceptions to the general rule was applicable, *Bratton* v. *Rudnick,* 283 Mass. 556 (1933); *Golden* v. *Amory,* 329 Mass. 484 (1952)[15] (act of God); *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161 (1932); *Cohen* v. *Brockton Sav. Bank,* 320 Mass. 690 (1947) (act of third persons). In none of these cases, however, was the validity and vitality of the doctrine challenged, and in all, it was affirmed.

Strict liability without regard to negligence or fault exists in this Commonwealth in other contexts. Notable among these are the blasting cases, where there has never been any dispute that "one carrying on blasting operations is liable without proof of negligence for all *direct* injuries to the property of another" (emphasis added). *Coughlan* v. *Grande & Son, Inc.* 332 Mass. 464, 467

---

[15] The judge below reasoned that the statement in *Golden* v. *Amory, supra,* to the effect that *Rylands* v. *Fletcher* "is the law of this Commonwealth," *id.* at 487, was not necessary to the decision there, and thus is not judicial precedent on the subject. Further, he stated that even if the court's reference to the *Rylands* case was a necessary part of that decision, it is not clear which reading of the *Rylands* case it adopted. We do not accept this position. In order to apply an exception to a rule, one must first accept the existence of the rule. It is clear that the exception was the basis for the court's refusal to impose liability, because the court there found that the flood causing the damage was an act of God, and then immediately stated, *"For this reason* the rule under discussion [strict liability] does not apply, and the defendants cannot be held liable for injury caused by the flood waters" (emphasis added). 329 Mass. at 488 (1952). Furthermore, the court there reversed a verdict for the plaintiffs on their negligence count, finding instead that there was no negligence as matter of law. Thus, we cannot accept the judge's reasoning in this regard.

(1955). *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447, 452 (1928). *Jenkins* v. *A. G. Tomasello & Son, Inc.* 286 Mass. 180, 186 (1934).[16] Likewise, strict liability is often imposed for the keeping of wild animals. "The owner or keeper of a wild animal is strictly liable to another for damage done to his person or property. And this liability does not depend on proof of previous acts showing a vicious disposition; nor can the owner or keeper escape liability by showing that he has exercised the utmost care to confine the animal or otherwise prevent it from doing harm." *Smith* v. *Jalbert,* 351 Mass. 432, 435 (1966). *Marble* v. *Ross,* 124 Mass. 44, 47 (1878). *Bottcher* v. *Buck,* 265 Mass. 4, 6-7 (1928). See anno. 21 A. L. R. 3d 603, 611-613 (1968). The policy underlying *Rylands* v. *Fletcher, supra,* that one who for his own benefit keeps a dangerous instrumentality should be liable per se for its escape, is equally applicable to these cases.[17]

Finally, the rule of strict liability was recognized as the law of the Commonwealth in *Sponatski's Case,* 220 Mass. 526, 531 (1915), a workmen's compensation case, and in *Opinion of the Justices,* 251 Mass. 569, 597 (1925), finding constitutional the statute requiring compulsory insurance for motor vehicles. In both cases, the doctrine of the *Rylands* case was cited as an example of instances where liability is imposed regardless of negligence or

---

[16] Some of the early blasting cases seem to rely on physical trespass as a basis for liability, although this language is conspicuously absent from more recent decisions. There may be no valid distinction between trespass and strict liability in this context, see Prosser, Torts, § 78, pp. 513-514 (4th ed. 1971), but that is something we need not decide. Suffice it to say that the blasting cases can be seen as representing a subspecies of strict liability cases and are based on the same underlying policy considerations.

[17] It could be argued that the blasting and wild animal cases are really just other applications of the *Rylands* doctrine. In each, a dangerous instrumentality used by the defendant, for his own benefit, escapes, causing damage. This is the basic *Rylands* fact situation.

fault. Thus, in light of the cases we have considered, we conclude that the rule of strict liability without regard to fault where the facts are established within the parameter of the *Rylands* case has been the law of this Commonwealth since 1868 and is an acknowledged rule of law today.[18]

The defendant would have us draw significance, however, from the fact that the *Rylands* case is not cited nor discussed in a number of cases where it might otherwise have been applicable. This we decline to do. In all the cases the defendant points to, there was no need to reach the strict liability issue, if, in fact, such issue was raised, because either negligence had been alleged and proved, *Bryant* v. *Bigelow Carpet Co.* 131 Mass. 491 (1881);[19] *Kelly* v. *Winthrop*, 219 Mass. 471 (1914); *New England Mica Co.* v. *Waltham Factories, Inc.* 301 Mass. 56 (1938), or the court was reversing a directed verdict for the defendant, *Gray* v. *Harris*, 107 Mass. 492 (1871), or the plaintiff could not recover under any theory in the particular facts established in the case, *Hoosac Tunnel & Wilmington R.R.* v. *New England Power Co.* 311 Mass. 667 (1942). Likewise, we believe it is irrelevant that in some of these cases the plaintiff proceeded only on a traditional negligence theory. This involves trial strategy and tactics of counsel who is usually in a better position to adopt them in the light of his own experience and peculiar knowledge of the facts. Finally, *Shrewsbury* v.

---

[18] As previously indicated, we are not being asked to change the law or to overrule prior cases, but rather, to hold that strict liability is not the law of the Commonwealth.

[19] The court itself in the *Bryant* case stated, "In the view we have taken [finding negligence on behalf of both defendants] it is not necessary to consider whether the doctrine of *Fletcher* v. *Rylands* . . . has any application to the case." *Id.* at 503. It is interesting to note that, if the defendant's theory of the *Rylands* case were correct, it would have been appropriate for the court in the *Bryant* case to have cited the *Rylands* case as authority, since there the court found negligence and imposed liability for water flowing from a dam.

*Smith,* 12 Cush. 177 (1853), on which the defendant places particular reliance, is not relevant to our consideration here because it was decided some fifteen years before *Rylands* v. *Fletcher, supra.*

In light of what we have said, it becomes necessary to examine the parameters of the strict liability doctrine to determine whether it is applicable to the facts as pleaded in count 2 of the declaration in this case. As previously stated, Lord Cairns in *Rylands* v. *Fletcher, supra,* narrowed the applicability of strict liability to those uses of one's property which could be termed "non-natural." This limitation subsequently developed into the requirement that, in order to subject a landowner to strict liability, he must be using his property in an "unusual and extraordinary" way. *Ainsworth* v. *Lakin,* 180 Mass. 397, 400 (1902).

In *United Elec. Light Co.* v. *Deliso Constr. Co. Inc.* 315 Mass. 313, 322 (1943), this court characterized a proper subject for imposition of strict liability as "an unusual undertaking or one of such an extremely dangerous nature that it must be performed at the sole risk of the one therein engaged." Thus, while upholding the strict liability doctrine, we held nonetheless that a mixture of cement and water used in underground tunnelling which escaped onto the plaintiff's property, was not a proper subject for imposition of strict liability, on the ground that "[t]hey were ordinary materials widely used in construction work." *Ibid.* To the same effect is a water tank or pressing system in a commercial building, *Fibre Leather Mfg. Corp.* v. *Ramsay Mills, Inc.* 329 Mass. 575 (1952); *Brian* v. *B. Sopkin & Sons, Inc.* 314 Mass. 180 (1943), and a chemical widely used in cleaning, *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161 (1932). Conversely, we found the useless wall of a burned out structure left standing to be an appropriate subject for strict liability, *Ainsworth* v. *Lakin, supra,* and the same is true of dams and dikes in certain cir-

cumstances. *Bratton* v. *Rudnick*, 283 Mass. 556 (1933). *Golden* v. *Amory*, 329 Mass. 484 (1952).

This formulation of strict liability is in accord with the proposed revision of Restatement 2d: Torts (Tent. Draft No. 10, April 20, 1964), § 519, which provides that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm . . . resulting from the activity, although he has exercised the utmost care to prevent such harm."[20] Section 520 then sets out the factors to be considered in determining whether the activity in question is to be considered "abnormally dangerous." These are: "[a] Whether the activity involves a high degree of risk of harm to the person, land or chattels of others; (b) Whether the gravity of the harm which may result from it is likely to be great; (c) Whether the risk cannot be eliminated by the exercise of reasonable care; (d) Whether the activity is not a matter of common usage; (e) Whether the activity is inappropriate to the place where it is carried on; and (f) The value of the activity to the community." Comment f to § 520 states in part, "In general, abnormal dangers arise from activities which are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances. . . . The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm which results from it, even though it is carried on with all reasonable care."

The tentative draft cautions against defining a type of activity as "abnormally dangerous" in and of itself, however, and advocates considering the activity in light of surrounding circumstances on the facts of each case. This, in essence, shifts consideration from the nature of the

[20] Section 519 was adopted in its original form at the forty-first annual meeting of the American Law Institute. Am. Law Inst. Proceedings, 454-455 (1964).

activity to the nature and extent of the risk. As an example, it distinguishes cases where large quantities of water are stored "in dangerous location in a city" from those in which "water is collected in a rural area, with no particularly valuable property near," imposing strict liability in the former but not the latter case. § 520 (3). We believe this approach is sound and comports well with the basic theory underlying the strict liability rule. Additionally, it finds support in our prior case law, and accordingly we choose to follow it.[21]

This case is before us on a report by a judge of the Superior Court and technically requires us only to answer the question reported. However, the defendant's demurrer to count 2 (strict liability) was sustained below on the theory that strict liability is not the law of the Commonwealth. Therefore, we feel compelled to address the demurrer issue. "A demurrer based on the ground that the declaration does not set forth any cause of action only raises the question whether the declaration states, even imperfectly, any kind of cause of action." *Gabriel* v. *Borowy,* 324 Mass. 231, 235 (1949). However, the "demurrer admits only facts well pleaded," *Johnson* v. *East Boston Sav. Bank,* 290 Mass. 441, 446-447 (1935); *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314 Mass. 142, 145 (1943), although "[g]reat detail in pleading well known torts or infringement of legal rights is not required." *Caverno* v. *Fellows,* 286 Mass. 440, 443 (1934). *Grueninger* v. *President & Fellows of Harvard College,* 343 Mass. 338, 340 (1961). We must examine

---

[21] We should note at this point that in cases where the doctrine of strict liability would otherwise be applicable on the facts, the defendant can avoid liability by showing that the "escape" was caused by an act of God, or intervening unlawful act of a third person. *Gorham* v. *Gross,* 125 Mass. 232, 238 (1878). *Bratton* v. *Rudnick,* 283 Mass. 556, 560-561 (1933). Likewise, if the plaintiff's damage does not directly result from the risk created, or is not a "natural consequence" thereof, recovery will be denied. *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161, 169 (1932). See *Coughlan* v. *Grande & Son, Inc.* 332 Mass. 464 (1955).

the plaintiff's declaration, then, to determine whether the facts pleaded are sufficient to state a cause of action in strict liability.

The relevant portion of count 2 of the plaintiff's declaration is set out in fn. 1. Although not a striking example of a well pleaded complaint, this count can be construed as setting forth sufficient facts to support all the elements of the plaintiff's claim.[22] It alleges that the defendant carried on the challenged activity for its own benefit, that said activity was dangerous and created a risk of harm to the plaintiff, that the danger thus created in fact ensued, and that the plaintiff was damaged thereby.

It is not for this court, at this juncture, to decide whether the ultimate facts established at the trial will make out a case for imposition of strict liability. "Whether the activity is an abnormally dangerous one is to be determined by the [trial] court, upon consideration of all the factors listed . . . and the weight given to each which it merits upon the facts in evidence." Restatement 2d: Torts (Tent. Draft No. 10, April 20, 1964), § 520, comment, p. 68. Moreover, the real issue is not the *sufficiency of the pleadings* but rather one of substantive law, namely the existence of strict liability as the law of Massachusetts. We decide merely that the plaintiff's declaration is sufficient to set forth a cause of action under Massachusetts Law. Accordingly, (a) we answer the reported question in the affirmative and (b) we reverse the order below sustaining the defendant's demurrer.

*So ordered.*

---

[22] In light of the delay of nearly six years between the entry of the order sustaining the defendant's demurrer and the argument of the appeal herein, we are willing to be somewhat less technical than usual in construing the plaintiff's declaration. We do so only because of the peculiar circumstances involved, so as to avoid further delay.