Stephen TODD
vs.
**BAY STATE STRUCTURAL SPECIALTIES**

**Civ. A. No. 680183**

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

**November 25, 1980**

Robert M. Laird for plaintiff.
Charles M. Crowley, Jr., Salvatore
    Stranondo for defendant.

## FACTS

Defendant Bay State Structural Specialties, Inc. ("defendant") was engaged during September, 1971, in certain construction at the site of the Museum of Science, Boston. The work required the use of certain specialized tools called "Ram Set guns." (A Ram Set gun, by firing bulletless .22 calibre cartridges, forces metal spikes or bolts into surfaces (such as concrete) which ordinary hammering could not penetrate.)

At the close of working hours on Friday, September 4, 1971, defendant's workmen placed all the Ram Set guns and their cartridges, together with other tools, in a work chest, or "gang box", at the work site. The gang box measured 4 feet in height, 2 to 3 feet across, and 3 feet in length. It had been fabricated from ⅞-inch plywood covering framing made of 2x4 lumber. The box was equipped with at least one hasp-and-padlock combination. Upon the workmen's departure that Friday; one of them locked the gang box. When the workmen returned on Monday, September 7, they found the gang box pried open and several tools, including the Ram Set guns and some of their cartridges, missing.

Meanwhile, on Sunday, September 6, in Charlestown, plaintiff had sustained serious injury when a Ram Set cartridge (thrown in his direction by an unknown person) struck a wall near his face, exploded, and caused his injury.

Both parties have now moved for summary judgment.

## DISCUSSION

We start with the undoubted obligation of a party conducting an ultra-hazardous activity, especially one involving the use of dangerous materials, to prevent that activity or those materials from injuring any person, **The Clark-Aiken Co. v. Cromwell-Wright Co., Inc.,** 367 Mass. 70, 89 (1975).

That obligation, however, does not make the individual an insurer against any harm which may result from the use by a third person of a dangerous instrumentality. For example, the intervention of a third-party tortfeasor exonerates the original user, **The Clark-Aiken Co. v. Cromwell-Wright Co., Inc.,** supra, at 90n. Plaintiff here does not concede such a limitation; but he argues that defendant is liable (even if not as an absolute insurer), because defendant negligently failed to take reasonable means to prevent theft of the Ram Set cartridges. In this connection, plaintiff relies on a Metropolitan District Commission Police report statement: "The tools had been stored in a homemade tool chest 4x5 feet, which was secured by a very inadequate hasp, which had apparently been forced without the expenditure any [sic] great effort."

This document does not solve plaintiff's difficulty. Offered without any kind of supporting affidavit, it fails the personal-knowledge, admissibility, and competency tests of Massachusetts Rule of Civil Procedure 56(e); see, J. Smith & H. Zobel, **Rules, Practice,** § 56.6. More important, even were one to regard the report as purveying facts admissible in evidence, it does not suffice to preclude summary judgment. It merely supplements the affidavit of McMahon, defendant's foreman, which in turn establishes that the box in which defendant locked the cartridges was secured by two hasps and two padlocks. Thus no one disputes that whoever took the cartridges had to break into a locked box to acquire them. Given that the box stood inside private property, and that whoever took the cartridges first committed a trespass, then vandalized a locked container, and finally committed an act of theft, defendant adequately discharged its obligation to strangers such as plaintiff. Defendant was not obliged to anticipate trespass, lock-breaking, and theft.

Plaintiff, however also asks the Court to adopt a rule of absolute or "strict" liability far beyond the present state of the law. In essence, plaintiff argues that the owner of a dangerous instrumentality is liable to anyone whom that instrumentality injures, even as the result of unlawful conduct by a third person. Thus here, plaintiff says, "whether or not defendant's padlocks were secure is irrelevant. . . ." (Pl. Br. p.9). The Supreme Judicial Court, on the other hand, has explicitly said that "in cases where the doctrine of strict liability would otherwise be applicable on the facts, the defendant can avoid liability by showing that the 'escape' [of the dangerous instrumentality] was caused by an act of God, or intervening unlawful act of a third person," **The Clark-Aiken Co. v. Cromwell-Wright Co.,** supra, at 90n.

When the Commonwealth's highest court has spoken so plainly, so aptly, and (equally important) so recently, any change in the governing principle must come, if it is to come at all, from the original source. Even if a change were desirable, inevitable, or imminent, a court of first instance must resist the temptation to induce the birth of a mutant doctrine, see, C. Wyzanski, **A Trial Judge's Freedom and Responsibility,** 65 **Harv. L. Rev.** 1281, 1297-1298 (1952).

In any event, the facts of this case facilitate resistance to whatever temptation plaintiff's argument may present. Defendant placed the cartridges in a locked box on the second floor of a privately-owned building. The storage did not cause plaintiff's injury; nor did defendant permit the cartridges to escape. Someone entered the premises unlawfully, violently broke into a secured container, and stole the cartridges which (we assume for the purposes of this discussion) came to injure plaintiff. If defendant is liable here, then any gun owner would be subject to suit by a person whose injury resulted from careless use by a third person of cartridges which a fourth person stole from the gun-owner's home. Indeed, the principle for which plaintiff contends would extend the current of liability through any number of intermediate possessors.

Defendant took reasonable precautions to secure the cartridges. Only an extra-

ordinary concatenation of events brought one of them in contact with plaintiff, far from the site of defendant's activity. This was not the sort of damages defendant's activity risked; "what is claimed to be consequence is only fortuity," **Petition of Kinsman Transit Co., 338 F.2d 725 (2d Cir. 1964), per** Friendly, J.

It is worth remembering that the strict-liability rule does not apply at all unless "the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability," **The Clark-Aiken Co. v. Cromwell-Wright Co., Inc., supra,** at 89. The risk here (that the cartridges would be stolen, and thereafter carelessly thrown) is not of such "magnitude" as to compel the imposition of strict liability. Nor do the surrounding circumstances justify it. Indeed the totality of the circumstances suggests that imposing strict liability on defendant here would violate not only the judicial proprieties, but ordinary principles of fairness.

The analysis this Court has applied has obviated the need to discuss one other aspect of the case fatal to Plaintiff's position. Although the foregoing discussion has assumed that the cartridge which injured plaintiff came from defendant's gang box, nothing in either party's moving papers makes the connection. Absent such a link, defendant is not liable on any theory. Moreover, we do not know the relationship of the ultimate tortfeasor (the person who actually threw the cartridge) to the thieves who plundered the gang box. Unlike the defendant in the classic case of eye-injury-producing horseplay, **Scott v. Shepard, 2 W.B1. 892, 96 Eng. Rep. 525 (1773),** defendant here did not set the explosive in motion, directly or indirectly.

### ORDER

Accordingly, defendant's motion for summary judgment is **allowed**; plaintiff's motion for summary judgment is **denied**. Judgment will enter, dismissing the complaint, with costs.

Hiller B. Zobel
Justice of the Superior Court