JONES, Justice
(dissenting).
I respectfully dissent. The Court of Civil Appeals’ affirmance of the trial court’s grant of the defendant’s motion for directed verdict on the strict liability count is grounded principally on two propositions: 1) Harper[1] should not be retroactively applied; and 2) the instant case is distinguishable from Harper in that the explosion in the instant case was accidental.
As to the quasi-prospective application of Harper issue, suffice it to say that this is a sparingly applied doctrine and there is not the slightest hint in this Court’s opinion in Harper that the Harper holding was intended to be restricted to that case and to causes of action arising on and subsequent to the date of the Harper opinion. Just as Casrell[2] and Atkins[3] were not so limited, Harper was not intended to apply only to future causes of action.
Turning now to the central thrust of the Court of Civil Appeals opinion, I can only observe that the mere posing of the intentional/accidental explosion dichotomy denotes a misunderstanding of the very premise upon which Harper is based. It is the carrying on of an abnormally dangerous activity that subjects one to liability for harm to another resulting from such activity. The manufacture and storage of nitroglycerin is, in every respect, as much an abnormally dangerous activity as the intentional carrying on of blasting operations for commercial or industrial purposes.
Indeed, one entire section of the Harper opinion is entitled “An Abnormally Dangerous Activity Constitutes Negligence.” To be sure, Harper addressed that activity in the context of an intentionally conducted blasting operation; but the basic principle upon which the Harper holding is founded is not so limited. The official Comments to the Restatement (Second) of Torts, §§ 519 and 520, abound with examples which include both intentionally conducted activities and maintenance and control of conditions and substances, all of which fall within the broad category of abnormally dangerous activities. Likewise, the case law in those states which have adopted these sections of the Restatement without equivocation include within the term “one who carries on *87 an abnormally dangerous activity” those who store abnormally dangerous substances as well as those who intentionally conduct operations which utilize such substances.[4]
Furthermore, the distinction relied upon the Court of Civil Appeals for rejecting the strict liability rule of the Restatement is totally without rational basis. The purpose for the imposition of strict liability in this kind of case is the shifting of the culpability test “to the conduct of the blaster in carrying on an abnormally dangerous activity which subjects innocent parties to an unreasonable risk of harm.” It is the control and dominion over the abnormally dangerous substance under ultrahazardous conditions that is characterized as the wrongful conduct within the traditional “duty/breach of duty principle of tort law.”
To quote directly from Harper: “The use of the explosives under abnormally dangerous conditions is negligence, and thus actionable if such conditions proximately caused damage to another.” Harper continues, “[Liability for an abnormally dangerous activity arises out of the intrinsic danger of the ultrahazardous activity itself and the risk of harm it creates to those in the vicinity.”
The “use” in the instant case consists of the Defendant’s manufacture and storage of the abnormally dangerous substance under its exclusive control. The reason for the rule of strict liability in no way diminishes just because the activity is one of intentionally storing as opposed .to intentionally exploding. Both constitute the carrying on of an abnormally dangerous activity.
Comment f, “Abnormally dangerous,” to § 520 of the Restatement states:
“Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence.”
These inquiries necessarily become issues of fact for the jury. I would reverse with instructions to remand the cause for trial on Count A.

. Harper v. Regency Development Co., Inc., 399 So.2d 248 (Ala.1981).

. Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976).

. Atkins v. American Motors Corporation, 335 So.2d 134 (Ala.1976).

. For a series of cases applying the strict liability rule of § 520 of the Restatement to the storage of substances far less inherently dangerous than nitroglycerin, see Cities Service Co. v. State, 312 So.2d 799 (Fla.Dist.Ct.App. 1975) (storage of phosphate slime); Clark-Aiken Co. v. Cromwell-Wright Co., 367 Mass. 70, 323 N.E.2d 876 (1975) (storage of large quantity of water); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971) (storage of poisonous gas); Yommer v. McKenzie, 255 Md. 220, 257 A.2d 138 (Md.1969) (storage of gasoline).